513 So.2d 1299 (1987)
H. Lewis SCHOETTLE, Appellant,
v.
STATE of Florida, DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT, aPPELLEE.
No. BR-132.
District Court of Appeal of Florida, First District.
September 17, 1987.
Rehearing Denied November 10, 1987.
*1300 Paul H. Amundsen of McDermott, Will & Emery, Tallahassee, for appellant.
Burton M. Michael, Asst. Division Atty., Division of Retirement, Tallahassee, for appellee.
SMITH, Chief Judge.
Schoettle, a teacher for approximately thirty years, appeals a final order denying his request for out-of-state service credit toward retirement for the school years 1963-64 and 1964-65, when he was employed at the George Seitz School, Kwajalein Atoll, the Marshall Islands. We reverse.
During the years in question, the military conducted highly secret missile testing on the atoll. The George Seitz School was built by the United States Navy for dependent children of American military and civilian personnel on the atoll in support of the military operation. The school was the only school on the atoll and attendance was mandatory for all school-age dependents residing on the atoll. It was tuition-free to attendees and operated as the equivalent of a public school in the United States. All students and teachers were United States citizens and the children of native Marshall Islanders were not permitted to attend.
When Schoettle was a teacher at the school, it was operated by two private companies, Transport Company of Texas and its successor company, Global Associates. Both these companies contracted with the United States government to provide support services to the military on Kwajalein. By way of explanation, Captain Allen, who was the United States Naval commanding officer of Kwajalein in 1963, testified that it was sometimes easier for the Navy to contract certain support services than to provide military personnel to carry out these functions. Accordingly, all logistic support for the missile range facilities, such as the school, the clinic, the bus transportation system, the commissary, the exchange, the service clubs and the military police were provided by these two companies. Though the school was operated by one or the other of these companies, the buildings, the supplies, the materials and the equipment were all furnished by the United States government and the latter were marked "property of the United States Navy."
Though Schoettle was paid by these private companies and not the United States government, the companies were reimbursed for his salary by the Department of Defense. Schoettle had to have a security clearance issued by the United States military before coming on board the island. He testified that he used military transport to go to and from the island and that he traveled per military orders. While on the island, he enjoyed benefits usually accorded only military personnel or government employees such as patronizing the officers' club and purchasing in the commissary and exchange.
The Division of Retirement (DOR) concluded that Dr. Schoettle's period of employment was with a private concern and not with the United States military so as to bring his service under and within the terms of section 238.06(9)(a), Florida Statutes,[1] authorizing out-of-state credit. The Director of DOR testified below that when deciding whether to accord out-of-state credit, the division looks to the nature of the employer  whether public or private  and that Schoettle was not in the employ of a public employer so he was denied credit.
The language of the controlling statute, section 238.06(9)(a) provides:
(9) Subject to the provisions of subsection (4), out-of-state service credit shall be allowed for:
(a) Service rendered as a teacher in American overseas dependent schools conducted by the Armed Forces of the United States for children of citizens of the United States, residing in areas outside the continental United States ...
*1301 On appeal, DOR contends that the George Seitz School was not an American overseas dependent school "conducted" by the Armed Forces of the United States as required by section 238.06(9)(a). Relying on the dictionary definitions of "conduct," the division reasons that the word "conducted" in the statute is synonymous with the words "managed, directed and carried on," and that the undisputed record evidence shows that the George Seitz School was managed, directed and carried on by the private companies.
At the outset, we note that this is not a case of demonstrated agency expertise in an area which requires this court to accord the agency's construction of the statute great weight. When an agency urges a construction based on common, ordinary meanings, this mitigates, if it does not entirely eliminate, the rule calling upon the court to accord "great deference" to the agency's interpretation of the statute. State Department of Insurance v. Insurance Services Office, 434 So.2d 908, 912 n. 6 (Fla. 1st DCA 1983); and All Seasons Resorts v. Department of Business Regulation, Division of Land Sales, Condominiums and Mobile Homes, 455 So.2d 544, 548 (Fla. 1st DCA 1984).
DOR cites Public Employees Relations Commission v. Dade County Police Benevolent Association, 467 So.2d 987 (Fla. 1985), for the proposition "that a reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence." However, the division has offered no explanation of how it arrived at "legislative intent," and points to no evidence to support its interpretation of "conducted by" as requiring direct payment by the Armed Forces to the teacher for his services, rather than through a contracting company reimbursed by the Department of Defense for providing the teacher's services. Instead, it is the department's position that it always denies credit when the employer was private rather than public. DOR offers no reason why the Legislature, if it thought at all, intended to or would intend to include a teacher paid directly by the military and supervised presumably by a military principal or other official, but exclude a teacher performing exactly the same function, but paid by a private company, and supervised by a private-citizen principal. Instead, we are simply left with a "rule without a reason."
If not "conducted" by the Armed Forces, by whom was the school "conducted"? The division offers no answer. It certainly was not "conducted" by the contracting company, as simple analysis will illustrate. Who could attend? Children of the military and civilians working under government contract. Who decided who could attend? Not the company  the government. Who paid for tuition and school expenses for the students? Not the parents of the students  but the government. Who allowed the school to operate on the militarily-controlled island? Not the company  the government. Whose idea was it to have a school? Not the company  the government. A school conducted on a militarily-controlled island, in a military-owned building, using military-owned text books, run on military time, paid for by public funds appropriated to serve, albeit indirectly, a military objective, is no less a school "conducted by the Armed Forces" because the actual teaching is performed by a teacher employed by a private company contracting with the government to provide this service, than if the teaching was performed by military personnel.
Statutory construction is ultimately the province of the judiciary. Our review of chapter 238, particularly sections 238.01(4) (defining teacher) and 238.06, leads us to conclude that the Legislature intended to allow teachers credit for out-of-state service in tax-supported public schools. See Salz v. Department of Administration, Division of Retirement, 432 So.2d 1376 *1302 (Fla. 3d DCA 1983). The focus of Chapter 238 is on the nature of the school where the teacher teaches  whether public or private  not on the status of the party who issues the payroll check. DOR acknowledges that the George Seitz School was operated as the equivalent of a public school in the United States. Further, the evidence reflects that the school was tax-supported. Finally, DOR has offered absolutely no policy reason for treating differently the George Seitz School  which was found to be the equivalent of a public school  because it was operated by the military through government contractors instead of directly by the military.
We do not think that a literal interpretation of the word "conducted" may properly be urged as the basis for disqualifying Dr. Schoettle. The general rule is that the manifest intent of the Legislature will prevail over the literal import of the words used by it. As recognized by the Florida Supreme Court in Barrington v. State, 145 Fla. 61, 199 So. 320, 323 (1940)[2], quoting from Commonwealth v. Henry, 229 Mass. 19, 118 N.E. 224, L.R.A. 1918B, 827:
The statute must be read with reference to its manifest intent and spirit and cannot be limited to the literal meaning of a single word. It must be construed as a whole and interpreted according to the sense in which the words are employed, regard being had to the plain intention of the Legislature.
We conclude that the manifest intent of the Legislature, when it enacted section 238.06(9)(a), was to provide out-of-state credit for those teachers, like Dr. Schoettle, who teach children of American dependents residing in areas outside the continental United States, in a public school provided by the Armed Forces for dependents only, notwithstanding the fact that for purposes of expediency, the school is operated for the Armed Forces by private companies.
REVERSED.
BOOTH, J., concurs.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting.
I respectfully dissent. I would affirm. The crucial question is, as indicated in the majority's opinion, whether the appellant rendered service "as a teacher in American overseas dependent schools conducted by the Armed Forces of the United States", as required by Section 238.06(9)(a), Florida Statutes. The answer to the question turns not solely upon an interpretation of law, but, as so often involved in review of agency orders, is a blend of both law and facts. The hearing officer's recommended order, which the reviewing agency, the Division of Retirement, accepted, included certain findings of fact, which, among other things, recited that the appellant was from July 31, 1963 until January 19, 1964, employed first by Transport Company of Texas (TCT), a private concern under contract with the United States, as a school teacher, and thereafter, until July 1, 1965, by Global Associates (Global), a private company successor to TCT as a teacher in the same school.
The word "conducted," meaning, as the majority correctly observes, "managed, directed and carried on," necessarily depends upon whether appellant was employed by the Armed Forces of the United States, or by the two contractors. While it is true that all of the necessary equipment, the supplies, the buildings, etc., were furnished by the United States government, the furnishing of equipment is not the central test for determining whether an employment relationship exists.[1] One of the indicia involves *1303 consideration of how appellant was paid. Although it is true that the compensation which appellant received came at least in part from the federal monies paid to the two companies under contract with the United States, he nevertheless was paid during all applicable periods by either of the two companies.
The primary test as to whether a person is an employee is who controls or has the right to control that person's work. See, e.g., Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503 (1927); St. Johns and H.R. Co. v. Shalley, 33 Fla. 397, 14 So. 890 (1894); Mumby v. Bowden, 25 Fla. 454, 6 So. 453 (1889); Hollis v. School Board of Leon County, 384 So.2d 661 (Fla. 1st DCA 1980). Thus, it is the right of control over the details of the employee's work, including the right to hire and to fire, which is the principal consideration in determining whether one is employed as an independent contractor or as a servant. Gulf Refining Co. v. Wilkinson. Accordingly, in determining whether the school in question was conducted by the Armed Forces of the United States, or by the two private companies, the court should focus its attention upon which entity had the right of control over the school and its employees. Under such test, if one, in contract with another to do a specific piece of work for the other person, furnishes and has absolute control over his assistants, and executes the work, either in accord with his own ideas or with a plan previously given him by the person for whom the work is done, without being subject to the latter's orders in respect to the details of the work, he is not considered a servant of the employer, but rather an independent contractor. Gulf Refining Co. v. Wilkinson.
Applying the above principles to the case at bar, if the United States were the employer, it would control both the method and manner in which the work was to be done, as well as the time and tenure of the service. See City of Boca Raton v. Mattef, 91 So.2d 644 (Fla. 1956). Nothing in the record so reflects. In fact, appellant failed in his burden in a section 120.57(1) disputed-fact hearing in showing that the United States  rather than the two private companies  controlled the method and manner in which the work at the George Seitz School was performed. Cf. Nelson v. Shell Oil Co., 396 So.2d 752 (Fla. 3d DCA), rev. denied, 407 So.2d 1104 (Fla. 1981) (low degree of control by oil company over the daily operations of a service station precluded a finding of vicarious liability as to the company for the acts of the employee of the station operators, who were independent contractors); Ortega v. General Motors Corp., 392 So.2d 40 (Fla. 4th DCA 1980) (manufacturer was not the principal of the franchise dealer, and therefore could not be subjected to vicarious liability in a wrongful death action where, among other things, under the terms of the franchise agreement, the dealership was not regulated in the hiring, firing or supervising of its employees).
In that the issue before us was appropriately resolved by the agency upon competent, substantial evidence, I would affirm.
NOTES
[1] This statute was formerly section 238.06(10).
[2] There, the court was construing the word "operated" in the statute relating to manslaughter growing out of the operation of an automobile. The court agreed that "operated" was not limited to the state of motion produced by the mechanism of an automobile, but included at least ordinary stops on the highway. Accordingly, the defendant, who in a drunken state, drove his car to a point and parked it where it was an obstacle in the path of other motorists, and an unwary motorist collided with the car and was killed, could be convicted under the statute.
[1] Parenthetically, the recommended order also states, and the evidence does not refute, that all logistical support for the missile range facility, such as the schools, the clinic, the bus transportation system, the commissary, the exchange, the service club and the military police were provided either by TCT, or by its successor, Global.