538 So.2d 878 (1988)
STATE of Florida, BOARD OF OPTOMETRY; Florida Optometric Association; Frank A. Broome, O.D.; and Howard J. Braverman, O.D., Appellants,
v.
FLORIDA SOCIETY OF OPHTHALMOLOGY; Florida Medical Association; William J. Broussard, M.D.; Tully C. Patrowicz, M.D.; Baxter H. Byerly, M.D.; and State of Florida, Department of Professional Regulation, Appellees.
No. 88-142.
District Court of Appeal of Florida, First District.
December 19, 1988.
On Motions for Rehearing and Clarification February 10, 1989.
*879 Robert A. Butterworth, Atty. Gen., and Allen R. Grossman, Asst. Atty. Gen., Tallahassee, for appellant State of Fla., Bd. of Optometry.
Leonard A. Carson and Lucille E. Turner, Carson & Linn, P.A., Tallahassee, for appellants Florida Optometric Ass'n, Frank A. Broome, O.D., and Howard J. Braverman, O.D.
Kenneth G. Oertel, Segundo J. Fernandez, and M. Christopher Bryant, Oertel & Hoffman, P.A., Tallahassee, for appellees.
ZEHMER, Judge.
This section 120.56 rule challenge proceeding involves a determination of the invalidity of rule 21Q-10.001, Florida Administrative Code, and is the companion case to Florida Society of Ophthalmology v. State of Florida Board of Optometry, 532 So.2d 1279 (Fla. 1st DCA 1988) (hereafter cited as Florida Society of Ophthalmology). The Florida Board of Optometry (Board) adopted this rule to implement the provisions of chapter 86-289, Laws of Florida, now codified as section 463.0055, Fla. Stat. (1987). This section authorizes optometrists licensed under chapter 463 and duly certified by the Board to administer certain topical ocular drugs in the diagnosis and treatment of the human eye. This practice previously fell within the exclusive domain of allopathic and osteopathic physicians who were licensed under chapters 458 and 459 and practiced ophthalmic medicine. See Florida Society of Ophthalmology, supra. The appellants include the respondent below, the Board of Optometry, and the intervenors below, Florida Optometric Association, Frank A Broome, O.D., and Howard J. Braverman, O.D. The appellees include the petitioners below, Florida Society of Ophthalmology, Florida Medical Association, William J. Broussard, M.D., Tully C. Patrowicz, M.D., and Baxter H. Byerly, M.D. (referred to collectively as petitioners), and the Florida Department of Professional Regulation (the Department), which, although named a respondent in the petition, later aligned itself with the petitioners.
This proceeding was initiated by the petition described in Florida Society of Ophthalmology, and we refer to that opinion for a more detailed description of the parties and the facts giving rise to this dispute. Appellees challenged the cited rule as an invalid exercise of the Board's delegated legislative authority and challenged, as constituting an unpromulgated rule, the validity of the application form the Board used in reviewing applicants for certification. The hearing officer, in a commendably thorough order, filed December 14, 1987 and reported at 10 F.A.L.R. 394, determined that all appellees had standing and held the rule and the form invalid.
In our recent Florida Society of Ophthalmology decision, we held that the petitioners did not have standing to initiate section 120.57 hearings to contest the certification of each optometrist under section 463.0055; however, we noted that the rule challenge issues now before us, including petitioners' standing to maintain such challenge, were not before the court on that appeal. For the reasons hereafter stated, we reverse the hearing officer's decision that petitioners had standing to maintain this rule challenge under section 120.56, but hold that the Department of Professional Regulation does have standing to maintain the rule challenge, and affirm the hearing officer's invalidation of the rule and the application form.

*880 I.

PETITIONERS' STANDING
Appellants have persistently maintained that petitioners lacked standing under the provisions of chapter 120 to maintain this proceeding. In Florida Society of Ophthalmology we held that petitioners failed to allege facts demonstrating that their substantial interests were sufficiently affected to afford them standing to initiate section 120.57 hearings to attack the certification of each applying optometrist. We expressly observed, however, "that standing in a licensing proceeding may well have to be predicated on a somewhat different basis than standing in a rule challenge proceeding" because "there can be ... a difference between the concept of `substantially affected' under section 120.56(1) and `substantial interests' under section 120.57(1)." 532 So.2d at 1288. The critical question is, therefore, whether the facts the hearing officer found demonstrate that petitioners are "substantially affected" by the enforcement of the subject rule.
The hearing officer made explicit findings of fact that ophthalmologists and optometrists "are to a significant extent offering similar health care," and that "the opportunities provided the certified optometrists coincide with part of the practice available to ophthalmologists." 10 F.A.L.R. at 419. With respect to each of the petitioners, the hearing officer found that:
75. Petitioner, Florida Society of Ophthalmology, is an organization concerned with, among other things, the educational interests of ophthalmologists and the quality of eye and health care delivered to the patients of ophthalmologists. It is also concerned on behalf of its members about the quality of eye care and health care of Floridians treated with medication by optometrists. Petitioner Florida Medical Association has the same concerns, responsibilities and purposes.
76. Petitioner, Tully C. Patrowicz, M.D., is a physician and ophthalmologist practicing in Mount Dora, Florida, since 1972. Dr. Patrowicz is a Board-certified ophthalmologist since 1974, and is also a past officer and president of Petitioner Florida Society of Ophthalmology. He is currently a member of both Florida Society of Ophthalmology and Florida Medical Association.
77. Petitioner, William J. Broussard, M.D., is a physician and ophthalmologist who has practiced in Melbourne, Florida, since 1967. He is a Board-certified ophthalmologist since 1966. Dr. Broussard is also a member and former office [sic] of Petitioner Florida Society of Ophthalmology.
10 F.A.L.R. at 419-20. The order does not contain any other findings of fact bearing on the issue of petitioners' standing. The order recites, in the conclusions of law, only that:
6. All parties, with the exception of Baxter H. Byerly, M.D., and Frank A. Broome, O.D., about whom no evidence has been presented, have demonstrated the necessary standing to participate in this action. See Florida Medical Association v. Board of Optometry, 426 So.2d 1112 (Fla. 1st DCA 1983), and Section 455.217, Florida Statutes.
10 F.A.L.R. at 426.
On this appeal, petitioners characterize appellants' attack on their standing as incredible, saying, "This court has twice instructed these parties that ophthalmologists and the same two associations present here as Appellees have standing to challenge Board of Optometry rules and non-rule policies when such rules and policies have the effect of infringing on the right to practice medicine," and citing Board of Optometry v. Florida Medical Association, 463 So.2d 1213 (Fla. 1st DCA), pet. for rev. denied, 475 So.2d 693 (Fla. 1985), (hereafter Board of Optometry), and Florida Medical Association v. Board of Optometry, 426 So.2d 1112 (Fla. 1st DCA 1983) (hereafter Florida Medical Association). (Appellees' Brief, p. 29.) Petitioners further state, "If the Board was strictly applying the requirements for certification set out in Section 463.0055, Fla. Stat., and was certifying only those optometrists who met such requirements, then Appellees would not have and could not *881 have successfully brought this challenge." (Id. at 30.) But, they argue, "by relaxing the requirements for certification, the Board has unlawfully certified hundreds of optometrists who do not meet the statutory standards" and that "It is this ultra vires act of the Board which exceeds the limited overlap of the practice of medicine which the legislature approved." (Ibid.) This argument, we observe, seemingly treats petitioners' standing as being dependent upon their ability to prevail on the merits, a proposition with which we do not agree.
Appellants argue that petitioners ignore the significant change made by chapter 86-289 in the statutory authority of optometrists to use certain topical ocular drugs. They point out that "as a result of these amendments, the prescription and administration of such drugs by optometrists does not infringe on the practice of medicine" so that petitioners "are not substantially affected by the Board's rule and do not have standing to challenge the rule." (Appellants' Reply Brief, p. 13.)
We conclude that petitioners and the hearing officer have given an overbroad interpretation to our decisions in Board of Optometry and Florida Medical Association. We agree with appellants that, for the reasons recently set forth in Florida Society of Ophthalmology, the overlapping of the traditional practice of ophthalmology with the optometrists' newly granted authority to use such drugs, which is the only factual finding upon which the hearing officer predicated petitioners' standing, is not legally sufficient to sustain petitioners' standing to maintain this section 120.56 rule challenge.
In Florida Dept. of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA), cert. denied, 359 So.2d 1215 (Fla. 1978), this court compared the more restrictive term "substantially affected," used in section 120.56, with the broader, more liberal term "affected persons," used in section 120.54, and concluded that, to have standing under section 120.56, the person challenging the validity of an adopted rule must show a direct injury in fact of "sufficient immediacy and reality" to the petitioner. Finding no evidence of such injury to the petitioner Jerry, the court denied him standing on the ground that any application of the challenged agency rule as to him would be purely speculative and conjectural.
In the instant case, petitioners' right to administer topical ocular drugs is no longer exclusively reserved to their field of practice regulated by chapters 458 and 459, Florida Statutes, and they no longer are in a position, as they were in Board of Optometry and Florida Medical Association, to assert a protected economic right that has been impaired by the subject rule. Consequently, petitioners' continuing general interest in the quality of eye care being provided to the public is not predicated upon a legally recognized right of sufficient immediacy and reality to support their standing to challenge the validity of the adopted rule. Cf., School Board of Orange County v. Blackford, 369 So.2d 689 (Fla. 1st DCA 1979). Petitioners, representing or being physicians licensed under chapters 458 and 459, are not subject to regulation or control under chapter 463, are not subject to regulation or control by the rule, and cannot predicate standing on the notion that the application of the challenged rule will prevent or obstruct their practicing ophthalmic medicine. Cf., Professional Firefighters of Florida, Inc. v. Department of Health and Rehabilitative Services, 396 So.2d 1194 (Fla. 1st DCA 1981). Whether application of the challenged rule will cause the petitioning physicians, or any physicians represented by the petitioning associations, an injury of sufficient immediacy and reality under the criteria set forth in Jerry is purely a matter of speculation and conjecture. Under the facts found by the hearing officer, there is no significant difference between the concepts of petitioners' "substantial interests" under section 120.57, as adjudicated in Florida Society of Ophthalmology, and petitioners' being "substantially affected" persons under section 120.56. See Farmworker Rights Organization, Inc. v. Department of Health and Rehabilitative Services, 417 So.2d 753, 754 (Fla. 1st DCA 1982).
*882 For these reasons, we hold that petitioners lack standing to maintain this proceeding and reverse the hearing officer's ruling to the contrary.[1]

II.

THE DEPARTMENT'S STANDING
Section 455.217, Florida Statutes (1987), cited in the final order as authority for the Department's standing, provides:
The secretary of the department shall have standing to challenge any rule or proposed rule of a board pursuant to §§ 120.54 and 120.56. In addition to challenges for any invalid exercise of delegated legislative authority, the hearing officer, upon such a challenge by the secretary, may declare all or part of a rule or proposed rule invalid if it:
(a) Does not protect the public from any significant and discernible harm or damages;
(b) Unreasonably restricts competition or the availability of professional services in the state or in a significant part of the state; or
(c) Unnecessarily increases the cost of professional services without a corresponding or equivalent public benefit.
However, there shall not be created a presumption of the existence of any of the conditions cited in this subsection in the event that the rule or proposed rule is challenged.
This statute explicitly gives the Department standing to challenge the validity of rules promulgated by the Board of Optometry.
In the instant case, however, petitioners rather than the Department initiated this rule challenge proceeding. The Department was initially named as a respondent and supported the respondent Board in upholding the validity of the challenged rule and application form. Only after the close of all evidence at the 120.56 hearing did the Department's newly assigned counsel align the Department with petitioners' views in respect to the invalidity of the rule and application form. Appellees objected to the Department's realignment by filing a motion to dismiss the Department as a party, alleging in part that the Department had been privy to their confidential and privileged communications. The Department's conduct in this case is unusual, to say the least, for it should have, at the outset, become sufficiently informed about the Board's rules to make a timely decision on the rule's validity. Nevertheless, we are not called upon at this time to determine whether the Department acted improperly in delaying its realignment until all the evidence was in the record. None of the parties have contested the Department's standing on this appeal, and we can perceive no prejudice to any party in upholding that standing. For reasons of judicial economy, we conclude that the issues concerning the validity of the challenged rule and application form were thoroughly presented to and considered by the hearing officer, and that there is no substantial reason for dismissing the entire proceeding and remanding with leave to the Department to initiate another rule challenge proceeding. We uphold the Department's standing to maintain this rule challenge so as to permit review of the hearing officer's decision on the merits.

III.

INVALIDITY OF THE RULE
Section 463.0055, Florida Statutes (1987), provides in pertinent part:
(1) Certified optometrists may administer and prescribe topical ocular pharmaceutical agents as provided in this section for the diagnosis and treatment of ocular conditions of the human eye and its appendages without the use of surgery or other invasive techniques... .
(2) The board shall issue certification for the administration and prescription of *883 topical ocular pharmaceutical agents in the diagnosis and treatment of ocular conditions to licensed practitioners who have completed the appropriate forms as required by the board and who have submitted proof of fulfilling all of the following requirements:
(a) Successful completion of at least 110 hours of approved transcript-quality coursework and clinical training in general and ocular pharmacology, as determined by the board. However, no course in pharmacology shall be approved by the board unless the course is conducted by an institution which has facilities for both the didactic and clinical instructions in pharmacology and which is accredited by a regional or professional accrediting organization that is recognized and approved by the Council on Postsecondary Accreditation or the United States Department of Education.
(b) Completion of at least 1 year of supervised experience in differential diagnosis of eye disease or disorders as part of the optometric training or in a clinical setting as part of optometric experience.
(c) Successful completion of an examination approved by the board which tests knowledge of general and ocular pharmacology with particular emphasis on the topical application of pharmaceutical agents for the eye and side effects of such pharmaceutical agents.
(3) The board shall establish by rule an application fee, not to exceed $250, and an examination fee, not to exceed $250, for certification pursuant to this section.
Rule 21Q-10.001 implemented the statutory provisions in the following language:
Application for Certification. To be certified to administer and prescribe topical ocular pharmaceutical agents a licensed practitioner must submit a completed application form provided by the Board, remit the application fee for certification specified in Rule 21Q-6.001(9), and demonstrate compliance with the following requirements:
(1) Successful completion of at least 110 hours of Board approved transcript quality coursework and clinical training in general and ocular pharmacology conducted by an accredited institution which has facilities for both didactic and clinical instruction in pharmacology. The institution must document the applicant's successful completion. The Board will accept coursework and clinical training in general and ocular pharmacology received by the applicant during his basic optometric curriculum or at post-graduate courses if this coursework and training was provided by a Board approved school of optometry or equivalent educational entity;
(2) Completion of at least one (1) year of supervised experience in differential diagnosis of eye diseases or disorders. The one year of supervised experience shall be received either during optometric training or in a clinical setting as part of optometric experience. The requisite one year of supervised experience in a clinical setting may be obtained in an academic or non-academic environment. For the purpose of this rule, one year of supervised experience in an academic setting is understood to mean three (3) quarters or two (2) semesters and one (1) year of supervised experience in a non-academic setting is understood to mean a twelve month period.
(3) Successful completion of a Board approved examination testing knowledge of general and ocular pharmacology with particular emphasis on the topical application of pharmaceutical agents. In order to be approved by the Board, the examination must have been administered in a Board approved school of optometry or at the conclusion of a post-graduate course conducted by a Board approved school of optometry, and the examination must be approved by the Board.
Petitioners and the Department argued to the hearing officer that the rule is an invalid exercise of delegated legislative authority because, one, "it is said to allow coursework and clinical training in general or ocular pharmacology received by the optometrist while undergoing basic optometric education as acceptable proof or in *884 partial compliance with the requirements of Section 463.0055(2)(a)"; two, "it would accept one year of supervised experience in a clinical setting which is academic or non-academic and that the academic setting means three quarters or two semesters and the non-academic setting means a 12 month period," contrary to section 463.0055(2)(b); and three, "it purports to accept the concept of compliance with Section 463.0055(2)(c) ... when the examination contemplated by that statutory reference has been given in an optometric school or following the conclusion of a post-graduate course." 10 F.A.L.R. at 427-28.
The final order held rule 21Q-10.001 invalid in only one of the several respects argued by petitioners and the Department:
(a) That the language within Rule 21Q-10.001(3), Florida Administrative Code, which states, "in order to be approved by the Board, the examination must have been administered in a board approved school of optometry or at the conclusion of a post-graduate course conducted by a board approved school of optometry, and the examination must be approved by the Board," is an invalid exercise of delegated legislative authority. The petition and challenge to that rule is otherwise dismissed.
10 F.A.L.R. at 435. Neither the Department nor the petitioners have appealed the failure to hold the rule invalid on any other grounds.
The final order contains extensive findings of fact showing the exhaustive efforts undertaken by the Board to evaluate the academic and clinical training provided at the various approved optometric schools so as to assure conformance with the requirements of the statute and the implementing rule. These efforts included extensive review and evaluation of actual and representative examinations given to the applicants during their academic training in all schools. The Board unquestionably made a good faith effort to comply with the statutory requirements for certification in accordance with its interpretation of the statutory language.
The hearing officer also found as a matter of fact that the legislative history of section 463.0055(2)(c) was inconclusive and thus not helpful in determining legislative intent, so that the statute's meaning must be determined from the statutory language alone. The hearing officer concluded that the Board's construction of subsection (2)(c) was erroneous because it was based upon an impermissible construction of the statutory language, which left without statutory support the provisions in subparagraph (3) permitting the statutorily required examination to be satisfied by successfully passing an examination administered incident to certain coursework in a Board-approved school or post-graduate course.
The legal precepts governing this issue are well established. Section 120.56 explicitly permits an administrative determination of the invalidity of an agency rule "on the ground that the rule is an invalid exercise of delegated legislative authority." The challenging party bears a heavy burden of showing "that the agency adopting the rule has exceeded its authority, that the requirements of the rule are not appropriate to the ends specified in the legislative act, and that the requirements contained in the rule are not reasonably related to the purpose of the enabling legislation but are arbitrary or capricious"; however, an agency rule that is found to exceed the agency's statutory authority is invalid. Grove Isle, Ltd. v. State Department of Environmental Regulation, 454 So.2d 571, 573, 575 (Fla. 1st DCA 1984). It is "axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute" and that "a rule which purports to do so constitutes an invalid exercise of delegated legislative authority." State Department of Business Regulation v. Salvation Limited, Inc., 452 So.2d 65, 66 (Fla. 1st DCA 1984). The critical question raised by this point is, therefore, whether the hearing officer erred in finding that the Board misconstrued the legislative meaning of section 463.0055(2)(c) by relying on examinations passed by applicants in pursuit of approved coursework in lieu of an examination administered contemporaneous *885 with the Board's review of the applications for certification.
Appellants rely on the precepts stated in Department of Professional Regulation, Board of Medical Examiners v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984):
The well recognized general rule is that agencies are to be accorded wide discretion in the exercise of their lawful rulemaking authority, clearly conferred or fairly implied and consistent with the agencies' general statutory duties... . An agency's construction of the statute it administers is entitled to great weight and is not to be overturned unless clearly erroneous... . Moreover, the agency's interpretation of a statute need not be the sole possible interpretation or even the most desirable one; it need only be within the range of possible interpretations... .
455 So.2d at 517. Thus, appellants argue, the Board's interpretation of subsection (2)(c) was within the range of possible interpretations of section 463.0055(2) and therefore must be sustained. They point out that even the hearing officer "recognized that the statutory language may give rise to a possible construction which allows the Board of Optometry to consider examinations offered in the course of study while in optometric school, or as part of post-graduate experience," and criticize the hearing officer for concluding that "given the use of the term `approved,' that is not a fair construction" or the "correct construction, when taking into account the language set forth in section 463.0055, Florida Statutes (1986 Supp.) and other provisions within that statute." 10 F.A.L.R. at 429. Appellants further argue that the hearing officer has erroneously construed the statute by adding to its plain language a requirement not clearly stated in subsection (2)(c), i.e., that the examination referred to not only be approved by the Board but also be administered by the Board.
We recognize that in Durrani we indicated that the court must approve the agency's selection of any possible interpretation of the enabling statute. But in so stating, we did not mean that any conceivable construction of a statute must be approved irrespective of how strained or ingeniously reliant on implied authority it might be; rather, as made clear in the cases cited in Durrani in support of the stated proposition, only a permissible construction by the agency that comports with and effectuates discerned legislative intent will be sustained by the court. Department of Administration v. Nelson, 424 So.2d 852 (Fla. 1st DCA 1982);[2]State Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981).[3]See also Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987, 989 (Fla. 1985) ("a reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence"). As we made quite plain in Schoettle v. Department of Administration, 513 So.2d 1299, 1301 (Fla. 1st DCA 1987), "statutory construction is ultimately the province of the judiciary." As we understand the hearing officer's statements, he meant only that the construction of section 463.0055(2)(c) adopted by the Board, while a possible one, was not a permissible one. So construed, nothing in the hearing officer's order is inconsistent with the precepts stated in Durrani.
In determining whether the language in section 463.0055(2)(c) directing "successful completion of an examination approved by the board" can be permissibly construed as delegating to the Board the power to authorize compliance with its provisions by *886 resort to an examination "administered in a Board approved school of optometry or at the conclusion of a post-graduate course conducted by a Board approved school of optometry," as rule 21Q-10.001(3) states, we believe the statute should be construed in accordance with the "basic rule of statutory construction that words of common usage, when used in an enactment, should be used in their plain and ordinary sense." Freedman v. State Board of Accountancy, 370 So.2d 1168, 1169 (Fla. 4th DCA 1979). To perform this function does not require any particular agency expertise, a fact that substantially mitigates the application of the rule calling for great deference to the agency's interpretation of the statute. Schoettle v. Department of Administration, 513 So.2d at 1301. In Schoettle we stated:
The general rule is that the manifest intent of the Legislature will prevail over the literal import of the words used by it. As recognized by the Florida Supreme Court in Barrington v. State, 145 Fla. 61, 199 So. 320, 323 (1940), quoting from Commonwealth v. Henry, 229 Mass. 19, 118 N.E. 224 (1918), L.R.A. 1918B, 827:
The statute must be read with reference to its manifest intent and spirit and cannot be limited to the literal meaning of a single word. It must be construed as a whole and interpreted according to the sense in which the words are employed, regard being had to the plain intention of the Legislature.
513 So.2d at 1302.
Applying these principles, it is obvious that section 463.0055(2) sets forth three requirements for certification to administer ocular drugs, and that each requirement addresses a separate, if not independent, concern. First, the statute requires that applicants must have completed a minimum amount of coursework in Board-approved courses. This requirement contemplates consideration of the applicant's formal academic schooling, either in the immediate or remote past, but does not contemplate that the Board expend any significant expenditure of funds to provide the applicant with such schooling. Second, the statute requires a minimum amount of supervised experience using ocular drugs. Again, this contemplates consideration of the applicant's practical experience, whether in the immediate or remote past, and does not contemplate any expenditure of Board funds to assist the applicant in acquiring such experience. Third, the statute requires the successful completion of a Board-approved examination that tests the applicant's knowledge of the ocular drugs to be administered after certification. Unlike the first two requirements, the Board is directed to set an examination fee to cover the cost of implementing this examination requirement as to each applicant, an indicator that the Board is required to incur some expenses in carrying out the examination function.
We agree with the hearing officer that section 463.0055(2)(c) must be construed as contemplating a Board-approved examination that contemporaneously tests the applicant's knowledge of general and ocular pharmacology, with particular emphasis on topical application of pharmaceutical agents related to the eye and the side effects of the implementation of those agents. We recognize that the Board or some other source may construct and administer the examination. The statutory language requiring that the Board approve the examination may not reasonably be interpreted to allow the Board to accept examinations taken incident to optometric school or post-graduate coursework as satisfying this statutory requirement. The requirement in subsection (2)(a) that each applicant for certification must have passed 110 hours of approved transcript-quality coursework and clinical training, which is defined in section 463.002(9) as coursework approved by the Board and requiring a test and passing grade, belies any notion that the examination required in 463.0055(2)(c) may also be satisfied by the very same coursework examination. The subsection (2)(c) examination is obviously a separate requirement that operates independently of the coursework testing required by subsection 463.0055(2)(a); otherwise, *887 it is redundant and without practical meaning.
We believe it is equally clear that the total statutory scheme contemplates that the examination requirement, unlike the coursework and experience requirements, is to be met by successfully completing a substantially uniform examination administered to all applicants at the time of their application. Section 463.0055 contemplates that the Board will incur expenses to construct and administer, or have others construct and administer, the required examination contemporaneously with the Board's review of the applications. Otherwise, there is no discernible reason for the statutory scheme directing the Board to charge one fee for the application, which necessarily includes review of the applicant's listed coursework and experience as specified in subsections (2)(a) and (b), and a separate fee for the examination specified in (2)(c). Moreover, reliance on coursework examinations taken long ago is patently inconsistent with the obvious legislative purpose that applicants be tested by a substantially uniform examination on their knowledge and competence at the time of their certification. As the hearing officer observed, to permit some applicants to rely on diverse examinations taken years ago in various schools in satisfaction of subsection (2)(a) requirements, while requiring other applicants to successfully complete an examination administered by or on behalf of the Board, exceeds a reasonable construction of the statutory language because it is inconsistent with the unambiguous requirement that all applicants successfully complete an examination approved by the Board. We note that section 463.0055(4) establishes a formulary committee to assist the Department in identifying topical ocular pharmaceutical agents that may be used by an optometrist certified under that section, yet only by administering a Board-approved uniform examination at the time of certification can an applicant be tested on his knowledge of the approved pharmaceutical agents authorized in the formulary under section 463.0055(4). As the hearing officer stated, "This contemporary measurement of understanding protects the public by advancing quality care." 10 F.A.L.R. at 431.[4]
As stated in State Department of Health and Rehabilitative Services v. McTigue, 387 So.2d 454, 457 (Fla. 1st DCA 1980), "While there is obviously room for some rulemaking and regulation by the Department in connection with each of the alternative subsections, the Department is not authorized to add to or modify those provisions that spell out with particularity the criteria that must be met in order to be eligible for a license." We hold that the Board in the instant case acted arbitrarily in adding to the statute authority to rely on coursework examinations to satisfy subsection (2)(c), and find no error in the hearing officer's invalidation of those provisions of the rule that impermissibly implement the examination requirements in section 463.0055(2)(c) by resort to coursework examinations.

IV.

INVALIDITY OF THE FORM
Section 463.0055 authorizes the Board to certify optometrists "who have completed the appropriate forms as required by the board and who have submitted proof of fulfilling all of the following requirements" in subparagraphs (2)(a), (b) and (c). The Board implemented this statutory directive by creating the application form challenged in this case. The final order finds that the form, although "designed to act as a facilitator," is nevertheless "the substantive *888 standard for review in all instances" as it "implements the Board's previous decision to accept the substantive information which it had been provided." 10 F.A.L.R. at 415. This finding is supported by competent, substantial evidence. The Board did not subject the application form to the section 120.54 rulemaking process.
We affirm the ruling that the application form constitutes an unpromulgated rule and is therefore invalid. We agree with the hearing officer that the application form constitutes a rule within the definition in section 120.52(15) covering "any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule." Appellants "concede that if the Rule is determined to be invalid, then the form is also invalid." (Appellants' Reply, p. 12). But it should be made clear that the type of information solicited by this application form, even if the subject rule were upheld in all respects, would nevertheless include "information not specifically required by statute or by an existing rule" and thus would have to be subjected to the rulemaking process under section 120.54.
AFFIRMED IN PART AND REVERSED IN PART.
SMITH, C.J., and BARFIELD, J., concur.

ON MOTIONS FOR REHEARING AND MOTION FOR CLARIFICATION
ZEHMER, Judge.
The amended motion for rehearing and motion for rehearing en banc filed by the following appellees, Florida Society of Ophthalmology, Florida Medical Association, William J. Broussard, M.D., Tully C. Patrowicz, M.D., and Baxter H. Byerly, M.D., is denied. Although, contrary to the proscription in Fla.R.App.P. 9.330, the motion merely re-argues the merits of our decision, we have nevertheless considered the motion on the merits and determined that none of the contentions warrants further discussion.
The motion for rehearing and motion for rehearing en banc filed by the appellants, State of Florida, Board of Optometry; Florida Optometric Association; Frank A. Broome, O.D.; and Howard J. Braverman, O.D., is also denied. Appellants contend that because the Department of Professional Regulation did not file an answer brief, this court, after finding that the remaining appellees lacked standing, should not have recognized the Department's standing to maintain the rule challenge and thus should have declined to review the merits of the hearing officer's decision invalidating the rule. In support of this contention, appellants cite Title and Trust Co. of Florida v. Salameh, 407 So.2d 1035 (Fla. 1st DCA 1981), and argue that we held in that case that an appellee is obligated to file an answer brief, and reversed the lower court's decision because the appellee in Salameh failed to file a brief. We do not agree. Although the court's opinion did denounce the appellee's failure to file an answer brief, that failure was not the basis for the court's decision to reverse the summary judgment under review. Rather, the court proceeded to review the case on the merits and reversed because it found a genuine issue of material fact remained in dispute, precluding the entry of summary judgment. The court's criticism of the appellee for failing to file a brief was mere dictum, and it has no precedential effect in this case. Furthermore, the appellee's failure in Salameh to file an answer brief was particularly burdensome to the court because no other appellee filed a brief presenting a position contrary to the appellant's. In the instant case, multiple appellees filed an answer brief presenting extensive arguments for affirming the hearing officer's decision.[1]
The Department clearly is a party to this appeal as an appellee. Fla.R.App.P. 9.020(f)(2) defines "appellee" as "every party *889 in the proceeding in the lower tribunal other than an appellant."[2] Fla.R.App.P. 9.210, which governs briefs in appellate proceedings, does not require an appellee to file an answer brief, it simply permits such a brief to be filed. Of course it is important for all parties to apprise the court of their position regarding the issues on appeal, but we will assume, as we did in this case, that a party having taken a position in the tribunal below will continue to adhere to that position until the court is notified to the contrary. Our clarification of this point should not be construed as approval of the Department's silence in this case. The filing of a notice to the court of the Department's joinder in or reliance on the positions and arguments taken in the answer brief of the remaining appellees would have been helpful. Nevertheless, the Department's failure to file such a notice or brief does not invalidate its participation as a party to the rule challenge proceeding before the hearing officer. Since the Department necessarily is a party appellee to this proceeding under the appellate rule, we had no basis in law to decline review of the appealed order on its merits.
We grant appellants' motion for clarification of our decision in respect to the date the rule shall be deemed void and unenforceable. They urge us to make clear that the rule may be invalidated only on a prospective basis in accordance with section 120.56(3), Florida Statutes (1987), which states:
The hearing officer may declare all or part of a rule invalid. The rules or part thereof declared invalid shall become void when the time for filing an appeal expires or at a later date specified in the decision.
It is apparent that the statutory scheme in chapter 120 for invalidating agency rules contemplates that once a rule, or an agency statement or form that constitutes a rule under the definition in section 120.52(16), Florida Statutes (1987), has been issued and acted or relied upon by the agency or members of the public in conducting the business of the agency, the rule will be treated as presumptively valid, or merely voidable, and must be given legal effect until invalidated in a section 120.56 rule challenge proceeding. The rule may be invalidated before becoming effective only by filing a rule challenge proceeding under section 120.54(4), Florida Statutes (1987), or initiating a drawout proceeding authorized in section 120.54(17), Florida Statutes (1987). The statutory scheme is obviously intended to avoid the chaotic uncertainty that would necessarily flow from retroactively invalidating agency action taken in reliance on the presumed validity of its rule prior to a proper rule challenge proceeding holding the rule invalid. Applying the theory underlying section 120.56(3) to this case, we hold that rule 21Q-10.001, which was held invalid by the hearing officer and our opinion, will become void and ineffective as of the date the decision of this court becomes final.
Appellees contend that even if the rule may be voided on a prospective basis only, the application form is not a rule and should be rendered void ab initio. We do not agree. The application form clearly meets the definition of a rule in section 120.52(16) and, as held in the hearing officer's order and in our opinion, is invalid because the agency failed to follow the proper rule promulgation procedure under section 120.54. It is, therefore, subject to the same provisions in section 120.56(3) as the invalid rule 21Q-10.001. To hold otherwise would be inconsistent with the manifest theory underlying the statutory scheme and would create extensive uncertainty regarding the actions of the Board taken in good faith reliance on the presumed validity of the rule and the application form. We can see no legal basis for injecting such chaotic uncertainty into otherwise final actions of the Board. As herein *890 in clarified, we adhere to our opinion and decision heretofore filed in this case.
SMITH, C.J., and BARFIELD, J., concur.
NOTES
[1] We intimate no opinion on the standing of petitioners to participate in a section 120.54 rulemaking proceeding as an "affected person." The record does not indicate that petitioners attempted to participate in a section 120.54 rulemaking proceeding in respect to the challenged rule.
[2] "[W]e have repeatedly held that when the agency committed with statutory authority to implement a statute has construed the statute in a permissible way under APA disciplines, that interpretation will be sustained though another interpretation may be possible." 424 So.2d at 858.
[3] "Whether the Department's interpretation of section 381.272(7) is the only possible interpretation of the statute, or the most desirable one, we need not say. It is within the range of permissible interpretations of the statute... ." 407 So.2d at 241.
[4] The hearing officer noted in his finding of facts (10 F.A.L.R. at 410-12) that the Board has not relied on the general licensure examinations under section 463.006 as satisfying section 463.0055(2)(c), and suggested in his conclusions of law (10 F.A.L.R. at 429-30) that the authorization in section 463.0055(3) of a separate fee for the subsection (2)(c) examination indicates that the legislature also contemplated an independent examination administered by the Board separately from the general licensure examination. The issues before the hearing officer and before us at this time do not encompass whether the Board may administer a subsection (2)(c) examination simultaneously with, but as a separate part of, the general licensure examination given pursuant to section 463.006, and we do not intimate any opinion an that issue.
[1] Had the Department also filed an answer brief, it should not have repeated the arguments in the answer brief already filed. Parties litigating before this court must keep in mind that our heavy workload does not afford time to read several briefs presenting repetitious arguments, and that they should coordinate their briefing. See Glendale Federal Savings and Loan Association v. State, Department of Insurance, 537 So.2d 1097 (Fla. 1st 1989).
[2] An appellant is "a party who seeks to invoke the appeal jurisdiction of a court." Rule 9.020(f)(1), Fla.R.App.P.