361 So.2d 792 (1978)
Carl WASSERMAN, Petitioner,
v.
FLORIDA STATE BOARD OF ARCHITECTURE and Department of Professional and Occupational Regulation, Respondents.
No. FF-82.
District Court of Appeal of Florida, First District.
August 1, 1978.
Rehearing Denied September 8, 1978.
Edward S. Jaffry of Horne, Rhodes, Jaffry, Stephens, Bryant, Horne & Chapman, Tallahassee, for petitioner.
Gerald W. Weedon and James C. Rinaman, Jr. of Marks, Gray, Conroy & Gibbs, Jacksonville, Dorothy Glisson; Stephen Marc Slepin of Slepin & Schwartz, Tallahassee, for respondents.
BOYER, Judge.
Petitioner seeks review of the final agency action of the Florida State Board of Architecture (hereinafter Board) denying his application for registration to practice architecture in the State of Florida.
In October, 1973, the petitioner filed with the Board an application for registration to practice architecture in Florida, pursuant to Section 467.11, Florida Statutes 1973, which states:
"Admission without examination.  Hereafter no person shall be admitted to the practice of architecture in this state without an examination except that a certificate of registration may be issued upon filing of application and payment of the same fees as if qualified by examination to a person who meets the requirements of applicants for examination as set forth in § 467.08 and has passed a standard examination and holds a current certificate issued by the national council of architectural registration boards and who furnishes satisfactory evidence of continued honorable professional practice after the passing of such examination together with satisfactory evidence of his present ability and integrity."
The requirements of Section 467.08, Florida Statutes 1973, are as follows:
"467.08 Rules Governing Examinations.  (1)(b) Any applicant for examination shall establish by satisfactory evidence to the board with his application that:
"1. He is twenty-one years of age;
"2. He is a citizen of the United States or has pending a declaration of intention so to become;
"3. He is of good moral character;

*793 "4. He is a graduate of an accredited high school or has education equivalent thereto; and
"5. He is either a graduate of a school or college of architecture appearing upon the list of approved schools and colleges of architecture as adopted and published by the board in its rules, with graduation therefrom evidenced by a diploma setting forth the applicant's degree, or has had training which shall be found by the board to be fully equivalent to such degree, and a minimum of one year of diversified training in offices of registered practicing architects."
Two and one-half years after petitioner applied, and several proceedings later, the Board entered an order denying his application because he did not hold a professional degree from an approved school or college of architecture or have the education and training found by the Board to be fully equivalent to such degree. Petitioner requested an administrative hearing. After the hearing, the hearing officer recommended that the Board enter an order denying the application. The Board then denied petitioner's application. This petition for review followed.
In 1972, petitioner passed the standard examination offered by the National Council of Architectural Registration Boards and holds a current certificate issued by the National Council. Therefore, the parties agree that the only pertinent issue presented to this court is whether petitioner has complied with Section 467.08(1)(b)(5), Florida Statutes 1973.
Petitioner raises as his first point the question of whether Section 467.08(1)(b)(5) constitutes an unlawful delegation of legislative authority contrary to Article III, Section I of the Florida Constitution. We agree that it does and that the statute is unconstitutional.
We base our holding on the case of Husband v. Cassel, 130 So.2d 69 (Fla. 1961). In that decision, the Florida Supreme Court had occasion to examine a similar statute concerning the certification of psychologists which stated in pertinent part:
"490.04 Certification. 
"(1) The Florida state board of examiners of psychology is empowered to grant certificates with the title `Psychologist' to those entitled under the provisions of this chapter. Before granting any such certificate, the board shall require any applicant therefor to pass a representative assembled written, and an oral or practical examination in psychology or both such oral and practical examinations, to be given at such time and place and under such supervision as the board prescribes, and also to submit such references and documents as may be required by the board. The board is empowered to rate the applicant and its decision is final in any examination. Such applicant shall pay fees as specified in § 490.06, and shall satisfy the board that he:
(a) is of good moral character,
(b) is a citizen of the United States,
(c) has received a degree of doctor of philosophy with a major in psychology from a university approved by the board as maintaining satisfactory standards or an equivalent degree in a field of psychology from a similarly approved university.
(d) has had at least one year's experience in the field of psychology, of a grade, character, and time distribution satisfactory to the board. * * * " (Chapter 490, Florida Statutes (1959))
Concerning the constitutionality of that statute, the Supreme Court stated:
"[1] An examination of this section reveals that the only limitations imposed by the legislature upon the board with reference to the examination to be given is that it must be on the field of psychology. This subject is extremely broad and the legislature has failed completely to define or delimit the field either expressly or by implication. As a consequence the board has it within its sole judgment and discretion to determine the nature and scope of the field to be encompassed in the examination determining applicants qualifications as psychologists. The board is thus authorized to examine without limitation or restraints and without benefit of legislative *794 safe guards in the form of limitations.
"Section 490.04(1)(c) is objectionable for the same reason as that application to F.S. Section 490.04(1), F.S.A. All applicants according to this former section are required to obtain a degree of Doctor of Philosophy with a major in Psychology. This degree must be obtained from a university approved by the board. The legislature has failed to provide any standards to guide the board in its approval of a university. In fact the board is also empowered to determine what constitutes an equivalent degree in the field of psychology without limitations imposed by the legislature. It is thus evident that the board has the unbridled discretion to determine all qualifications of applicants as well as all requirements for the establishment of their competency in order to be certified as psychologists and to practice that profession in the state of Florida.

* * * * * *
"We are of the conclusion that F.S. Chapter 490, F.S.A. is unconstitutional in that it fails to sufficiently fix the standards to be applied and in effect delegates the application of the statute without sufficient limitations on the discretion of the appellant board." (130 So.2d at pages 71 and 72) (emphasis supplied)
We find the reasoning of Husband equally applicable in this case. The statute in question here, Section 467.08(1)(b)(5), Florida Statutes 1973, fails to establish any standards to guide the Board in approving schools and colleges of architecture or in the determination of equivalent training. It is therefore unconstitutional.
In regards to the requirement of a standard, the Florida Supreme Court in Dickinson v. State, 227 So.2d 36 (Fla. 1969) stated:
"The exact meaning of the requirement of a standard has never been fixed. The exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulating enactments under the police power. However, when statutes delegate power with inadequate protection against unfairness or favoritism, and when such protection could easily have been provided, the reviewing court should invalidate the legislation. In other words, the legislative exercise of the police powers should be so clearly defined, so limited in scope, that nothing is left to the unbridled discretion or whim of the administrative agency charged with the responsibility of enforcing the act." (227 So.2d at page 37) (Citations omitted, emphasis supplied)
Here, the evidence of unbridled discretion in overwhelming. When petitioner first applied to the Board, he was turned down simply because his degree was not on the Board's list of approved degrees from approved schools. The Executive Secretary of the Board, Mr. Herbert Coons, Jr., testified that he made the decision to deny petitioner's application unilaterally and that the application was not examined any further after the determination was made that petitioner's degree was not on the required list. No attempt was made to examine petitioner's application in light of the provision in the statute "or has had training which has been found by the board to be fully equivalent to such degree." F.S. 467.08(1)(b)(5). When petitioner asked that his application be examined under that provision, the Board decided that the phrase required that petitioner have the educational equivalent of a required degree and referred the matter to Mr. Arnold F. Butt, Chairman of the Department of Architecture at the University of Florida and Educational Consultant to the Board. Mr. Butt admitted several times that he had no objective standard to go by when he made the determination that petitioner did not have the educational equivalent of a required degree and that he made his determination simply by comparing petitioner's college transcript to the course requirements of the five year degree program in operation during the 1974-1975 school year at the University of Florida. (Petitioner graduated from college in 1954.)
Thereafter petitioner instituted an action in Circuit Court seeking a declaratory judgment as to the meaning of Section 467.08, *795 more specifically the meaning of the word "training" as it appears in subsection (1)(b)(5). After a hearing on the matter, Judge Hugh M. Taylor of the Second Judicial Circuit held "that the phrase `training which shall be found by the Board to be fully equivalent to' a degree in architecture means that an applicant must have acquired by any combination of private study, classroom education, on the job training and/or other practical experience a degree of proficiency found by the Board after study of each applicant's qualifications, to be fully equal to the degree of competency as an architect possessed by a graduate of an accredited school."
Finally, petitioner was given a hearing before the Board in light of the Circuit Court's holding. Thereafter the matter was submitted to a subcommittee of the educational advisory committee chaired by Mr. Butt. After several months the subcommittee wrote a report finding that petitioner did not have the necessary educational background in architectural design or course work in humanities, liberal arts and social sciences; that designs submitted by petitioner did not show that through on the job training he had achieved a level of desired competence in architectural design and in fact that he had only obtained the level of a third year architectural student in a five year program; and finally that he had not submitted any evidence of involvement in "professional organizations" or "community activities" which would indicate that he had acquired the necessary knowledge in the social sciences, humanities, and liberal arts areas.
At the administrative hearing which followed, Mr. Butt admitted that neither he nor the Board had ever published anything or written down anything concerning the type of community projects which would be adequate to make up for a humanities deficiency. He further testified that as of the date of the administrative hearing, no standards had been set forth by the Board to determine whether or not an applicant has the equivalent of the required degree. Mr. Coons also testified at that hearing that the Board has no set standards for determining the equivalency of a required degree but reviews each individual case as to equivalencies and that the Board has neither adopted nor published any kind of standard of equivalency to make the finding called for under the 1973 Statute.
Thus, under the statute in question, the Board has the unbridled discretion to determine who will and who will not practice architecture in this state.
The Board relies on several cases, among them Attwood v. State, ex rel. Newman, 53 So.2d 825 (Fla. 1951). However, that case is distinguishable. The statute in Attwood contained a standard found in the phrase "such school or college of pharmacy holding membership in the American Association of Colleges of Pharmacy." Therefore the Attwood court found that the Florida State Board of Pharmacy did not have an unlimited and uncontrolled discretion in determining which schools would be accepted as accredited. Section 467.08(1)(b)(5), Florida Statutes 1973, contains no such standard, even though the record reveals that there is a National Architectural Accreditation Board which evaluates the programs of various schools in the U.S. and lists them as accredited or refuses to do so.
The Board's reliance on Levine v. Hamilton, 66 So.2d 266 (Fla. 1953) is similarly misplaced. There, the court recognized that the board of pharmacy could determine the subjects contained on the entrance examination to be administered to persons seeking entrance to the practice of pharmacy. We are not here concerned with whether or not the Board has the discretion to determine which subjects should be contained on an entrance examination.
Section 467.08(1)(b)(5) was amended in 1974. We make no comment concerning the constitutionality of the amended statute, and limit our holding to the statute as it read in 1973.
Because we have decided that Section 467.08(1)(b)(5), Florida Statutes 1973, is unconstitutional and is therefore void and unenforceable, we do not reach petitioner's other points.
*796 The Petition for Review is granted and the Board's final order denying petitioner's application is vacated. The case is remanded to the Board to determine the status of petitioner's application in light of our holding.
McCORD, C.J., and MELVIN, J., concur.