612 So.2d 646 (1993)
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF DENTISTRY, Appellant, Cross-Appellee,
v.
FLORIDA DENTAL HYGIENIST ASSOCIATION, INC., Appellee, Cross-Appellant.
No. 90-3401.
District Court of Appeal of Florida, First District.
January 14, 1993.
*647 Robert A. Butterworth, Atty. Gen., Allen R. Grossman, Asst. Atty. Gen., Tallahassee, for appellant.
Paul Watson Lambert, Tallahassee, for appellee.
PER CURIAM.
The Department of Professional Regulation, Board of Dentistry (Board), appeals a final order of a hearing officer of the Division of Administrative Hearings holding invalid two proposed rules promulgated by the Board. The appellee, Florida Dental Hygienist Association, Inc. (hygienists or hygienist association) cross-appeals, asserting error in the hearing officer's ruling that the Board may validly approve schools or colleges by rule, rather than by order. We affirm the issue on cross-appeal without discussion. Finding no error in the hearing officer's ruling that the hygienists have standing to challenge the validity of the proposed rules pursuant to section 120.54(4), Administrative Procedure Act, and that the proposed rules are an invalid exercise of delegated legislative authority, we affirm both as to the appeal and cross-appeal.
Under section 466.007(2)(b), Florida Statutes, (1989), a person desiring to be licensed as a dental hygienist may apply to the Department of Professional Regulation to take the licensure examination if, among other things, the person "is a graduate of a dental hygiene college or school approved by the Board or accredited by the Commission on Accreditation of the American Dental Association or its successor agency." Rule 21G-8.004(2), Fla. Admin. Code, in its existing form, provides: "(2) Only those dental hygiene colleges or schools accredited by the Commission on Dental Accreditation of the American Dental Association or its successor agency are deemed approved by the Board for the purposes of section 466.007(2)(b), F.S."
In July 1989, the Board published notice of its intent to amend the rule so that, as *648 amended, the rule would read in part as follows:
(2) Dental hygiene or dental colleges or schools accredited by the Commission on Dental Accreditation of the American Dental Association or its successor agency are deemed approved by the Board for the purpose of section 466.007(2)(b), F.S. The Alabama Dental Hygiene Program sponsored by the Alabama Board of Dental Examiners is determined to be a dental hygiene college or school within the meaning of 466.007, F.S., and is hereby approved by the Board.
Subsequently, the Board proposed a second rule, an amendment to rule 21G-8.004(3), Fla. Admin. Code, which would establish criteria for approval of a dental hygiene college or school under section 466.007, Florida Statutes.
The hygienists filed a petition challenging the proposed amendment designating the Alabama Dental Hygiene Program (ADHP) as an approved dental hygiene college or school within the meaning of section 466.007, and subsequently filed a second rule challenge petition attacking the validity of the proposed amendment setting up criteria to be used by the Board in approving a dental hygiene school or college. The hygienists' attack focused on the contention that although the statute authorized the Board to approve dental hygiene colleges or schools, the legislative intent of section 466.007(2)(b) was to allow Board approval only as to dental hygiene schools or colleges meeting the educational standards of institutions accredited by the Commission on Accreditation of the American Dental Association. If otherwise interpreted, the hygienists argued, the statute, under which the rules were promulgated, would be unconstitutional as an unlawful delegation of legislative authority, citing Florida State Board of Architecture v. Wasserman, 377 So.2d 653 (Fla. 1979). The two petitions were consolidated, and after an evidentiary hearing, the hearing officer entered a final order agreeing, in essence, with petitioner's contentions that the proposed rules would modify, enlarge or contravene section 466.007(2)(b), and thus constituted an invalid exercise of delegated legislative authority. This appeal followed.
The issue of standing on the part of the hygienists was raised below in the Board's motion to dismiss both petitions. For purposes of ruling on the standing issue, the Board agreed the allegations of the hygienists' petitions should be accepted as true, without the necessity for further proof. The hearing officer denied the motions to dismiss, concluding, albeit not without some difficulty, that the hygienist association had standing. The Board contends, as it did below, that the hygienists' petitions and supporting evidence failed to demonstrate the hygienists status as a "substantially affected person," under section 120.54(4)(a), Florida Statutes (1989), as interpreted by the courts. We disagree.
The petitions claimed injury in fact based upon allegations that the proposed amendments would allow graduates of the ADHP or other dental hygiene colleges or schools which do not meet the standards of accreditation of the Commission on Accreditation of the American Dental Association, to sit for examination as licensed dental hygienists, without meeting the minimum educational and training requirements of the Florida Statutes. This, according to the petitions, would immediately dilute the quality of licensed dental hygienists available to practice dental hygiene in the state of Florida. The petitions also allege that the proposed rules would have irremediable effects by allowing less than fully qualified persons to practice dental hygiene in derogation of the legislative purpose and intent of chapter 466, Florida Statutes, to the detriment of the public safety and welfare. It is also alleged that the proposed rule amendments are within the hygienists' "zone of interest" in that it is the purpose of the Florida Dental Hygienist Association to ensure, on behalf of its members, that the quality of dental hygiene practice is maintained in the best public interest, and further, to ensure that persons licensed as dental hygienists meet stated minimal education and training requirements under the applicable law.
*649 The hygienists' brief cites a number of cases in support of its contention that it has standing to maintain the rule challenges. The hearing officer's final order cites and accurately analyzes each of these cases, pointing out the distinguishing features of each, finally concluding that since the cases relied upon by the hygienists do not involve facts that are the same as, or analogous to the facts of the present case, "it is possible that none of them afford a firm basis for reaching a decision on standing in this case."[1] Nevertheless, the hearing officer concluded that the hygienist association, "an association of dental hygienists, one purpose of which is to maintain the standards of the profession, has standing when the challenged proposed rules will open its profession to persons whom it considers to be unqualified or less qualified."
Although the hygienists' petition alleges injury-in-fact, the petitions do not specifically allege a prospective or threatened economic injury. The evidence establishes that dental hygienists are employed almost exclusively by dentists, and are subject to their control attendant to such employment. The association argues that the licensing of lesser qualified individuals lowers the standing of dental hygiene practice in Florida, thereby producing a lesser-qualified pool of competitors. Accordingly, the hygienist association contends, the employment of dental hygienists with higher qualifications will be adversely affected. The hygienist association points to no evidence in the record establishing to what extent dentists, given the choice, will opt to employ an ADHP-trained dental hygienist in preference to an arguably more highly trained and educated member of the hygienist association. That some dentists will so choose appears likely, however, given the enthusiastic endorsement of the ADHP by the dentists who testified in favor of the rules. It requires no flight of imagination to reason that if the rule would produce a flood of lesser-trained hygienists, presumably available for employment for less compensation, this would have an economic impact on the existing pool of more highly-trained individuals.
The issue, so far as standing is concerned, therefore may be viewed as whether, considered in the light most favorable to the hygienist association, the petitions' references to the effect of the proposed rules as "diluting the quality of licensed dental hygienists available," and "allowing less than fully qualified persons [to] practice dental hygiene," in derogation of the Florida Statutes and "detrimental the public safety and welfare," coupled with the allegations concerning the association's purpose to ensure that persons licensed as dental hygienists meet the educational and training requirements established by law, are sufficient to satisfy the statutory requirement of stating "facts sufficient to show that the person challenging the proposed rule would be substantially affected by it." Section 120.54(4)(b), Florida Statutes. These allegations suggest, however vaguely, that the hygienists' concern is motivated by its desire to lessen competition for its members in the field. Additionally, *650 when considered in context, they also suggest that by allowing licensure, as dental hygienists, persons who do not meet the educational and training standards established by law, the rule has the effect of depriving the association's members of the value of their investment in the additional education and training they acquired, under existing law, in order to become licensed. The issue of standing in this case, as the hearing officer obviously recognized, is not easily resolved from existing case law.
Thus far, we have no decision recognizing mere anti-competitive interests alone as sufficient to confer upon a trade or professional association standing to challenge a proposed rule. Cf. ASI, Inc. v. Florida Public Service Commission, 334 So.2d 594 (Fla. 1976); Florida Medical Association v. Department of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983); and State Board of Optometry v. Florida Society of Ophthalmology, 538 So.2d 878 (Fla. 1st DCA 1989). Further, as for the hygienists' alleged concern for the "public safety and welfare," our decision in State Board of Optometry v. Florida Society of Ophthalmology, supra, precludes a finding of standing based solely upon this allegation. In that case, Judge Zehmer, writing for the court, first pointed out that the petitioners in that case, unlike the petitioners in Florida Medical Association v. Department of Professional Regulation, supra, because of statutory changes were no longer in position to assert a statutorily protected economic right that had been impaired by a rule. Judge Zehmer then added:
Consequently, petitioners' continuing general interest in the quality of eye care being provided to the public is not predicated upon a legally recognized right of sufficient immediacy and reality to support their standing to challenge the validity of the adopted rule.
538 So.2d at 881.
Despite the ruling of State Board of Optometry that a general interest regarding the quality of care rendered to the public is not sufficient to confer standing, we find that the hearing officer's ruling that the hygienists have standing to challenge the validity of the proposed rule in question warrants our approval. In so ruling we concede that the issue is not as clear-cut as it was in Florida Medical Association. In that case we held that a physician and a medical association had standing to challenge, as an invalid exercise of delegated legislative authority, a rule allowing optometrists to prescribe and use certain drugs in treating patients, which by statute was within the exclusive field of practice of physicians. In so holding, we found sufficient to confer standing allegations that the rule constituted an encroachment upon a valuable, statutorily conferred property right, i.e., the right to practice medicine, which is protected by due process. We also found that by purporting to authorize acts by optometrists that were unlawful under a statute, and contrary to the stated purposes of the statutes aimed at protecting the public by ensuring that only qualified persons be allowed to engage in the health care professions, the "zone of interest" component of the standing requirement was satisfied. Florida Medical Association, 426 So.2d at 117.
Applying an analysis similar to that used by the court in Florida Medical Association, under section 466.007(2)(b), only hygienists who are graduates of a "dental hygiene college or school" approved by the Board or accredited by the Commission on Accreditation of the American Dental Association or its successor agency are currently eligible for licensure as dental hygienists in Florida. Under the current rule, 21G-8.004(2), Fla. Admin. Code, only those dental colleges or schools accredited by the Commission are approved by the Board. Thus, much like the statutes in Florida Medical Association, the statute and the rule involved here delineate the right of persons to engage in a particular health care occupation, and establish criteria regarding the qualifications of entry into the field for the protection of the public. Based upon the facts alleged by the hygienists, the truth of which the Board conceded, it logically follows that by allowing previously unqualified persons to enter the field, the proposed *651 rule substantially impacts upon the rights of qualified Florida dental hygienists derived from section 466.007. By allowing unqualified persons to enter the field, the proposed rule changes tend to diminish the value of the additional time and capital expended by the hygienists in order to meet the higher educational and training standards required under existing law. Thus, those hygienists who are already qualified, licensed and practicing in Florida have a sufficient interest in maintaining the levels of education and competence required for licensing to afford them standing to challenge an unauthorized encroachment upon their practice. Since the individual members of the hygienist association are "substantially affected person[s]," section 120.54(4), the association has standing as the representative of its members to challenge the validity of the proposed rules. Florida Home Builders Association v. Department of Labor and Employment Security, 412 So.2d 351 (Fla. 1982).
Contrary to the Board's position, the hygienists' allegations to establish standing amount to more than the expression of a "general interest" in the quality of dental health care provided to the public. This case therefore cannot be said to fall within the ambit of our holding in State Board of Optometry v. Florida Society of Ophthalmology, supra. Because of our view that the professional and economic interests of the hygienists are directly affected, as indicated above, our ruling concerning standing cannot be said to rest solely upon the association's self-serving declaration that one of its purposes is to generally maintain the standards of the profession for the benefit of the public. Further, while we acknowledge that the threatened encroachment upon the practice of the dental hygienists in this case is not as apparent as the encroachments complained of by the physicians in Florida Medical Association, we think the difference is more in the degree, rather than in the nature of the threatened injury. Although it may be argued that the value of a person's vested rights to engage in a health care occupation may be less capable of articulation than rights accruing to a health care professional, this should not justify a corresponding disparity in their right to pursue through litigation their legitimate grievances under the law.
Moreover, it should be noted that unlike Florida Society of Ophthalmology v. State Board of Optometry, 532 So.2d 1279, 1284 (Fla. 1st DCA 1988), the present case is a rule challenge proceeding, not an attempt to gain access to a 120.57(1) licensing proceeding. This distinction is significant. Prior decisions in licensing or permitting cases have made it clear that a claim of standing by third parties based solely upon economic interests is not sufficient unless the permitting or licensing statute itself contemplates consideration of such interests, or unless standing is conferred by a rule, statute, or based on constitutional grounds. Florida Medical Association, 426 So.2d at 1117-1118; Florida Society of Ophthalmology, 532 So.2d at 1287. Further, as we reiterated in State Board of Optometry, standing in a licensing proceeding may well have to be predicated on a somewhat different basis than standing in a rule challenge proceeding, because there can be a difference between the concept of "substantially affected" under section 120.56(1), and "substantial interests" under section 120.57(1). 538 So.2d at 880. Because challenges to proposed rules, under section 120.54(4), may be brought by a "substantially affected" person as is the case under section 120.56 rule challenges, the distinction drawn in State Board of Optometry is applicable to challenges of proposed rules.
In addition, as we discussed in Florida Medical Association, 426 So.2d at 1114-1115, and Florida Society of Ophthalmology, 532 So.2d at 1287, we note again the significance of a claim of illegality in a rule challenge proceeding, which should be distinguished from a claim of encroachment upon competitive economic interests. Here, as above-noted, the hygienists' standing claim is predicated upon the alleged unconstitutional exercise of delegated legislative authority. In this regard, we feel it is appropriate to consult the work of the late Patricia A. Dore, Professor *652 of Law at Florida State University, who was an eminent scholar in the field of administrative law. In her exhaustive treatise, Access to Florida Administrative Proceedings, 13 Fla.St.U.L.Rev. 965, 1014 (1986), Professor Dore asserted that the "substantially affected person" access or standing standard for rule challenges under section 120.54(4) "was intended to create an opportunity for a citizen initiated check on rule making that exceeded delegated statutory authority." Further, she explained: "It was designed to promote an inexpensive and effective way for persons who would be substantially affected by a proposed rule to prevent that rule from ever going into effect if an independent hearing officer found that the proposed rule went beyond the agency's statutory authority." Id. She believed that such a proceeding could be initiated by "any person who would be affected in an important and significant way if the proposed rule were adopted by the agency." Id. at 1010. Ms. Dore further explained that since the legislature had placed authority over section 124.54(4) proceedings in an executive branch agency (DOAH), once a DOAH hearing officer determines that a petitioner is a person affected in an important and significant way if the proposed rule should become effective, the hearing officer's access decision should stand, even though such person might not satisfy the standing requirements to institute a suit in a court of law. Id. at 1017. She concluded that the legislature did not intend that the access requirements necessary to challenge a proposed rule be synonymous with the standing requirements for bringing an action at law. Thus, in her view, only when a hearing officer denies access by applying a standard more demanding than the statutory provision requires should a reviewing court intervene. Id. at 1017-18.
The significance of these observations by Professor Dore could not be more obvious than in a case such as the one before us. Here, the Florida Dental Association, which fully supported the actions of the Board in adopting the proposed rules, was allowed to intervene and participate fully in the proceedings below. The hygienists' objection to allowing the Dental Association intervenor status was denied by the hearing officer. Thus, under the hearing officer's rulings, both the Dental Association and the hygienists, the primary protagonists in this controversy, were allowed to be fully heard. In all fairness, to deny the hygienists' standing to challenge unauthorized actions of the Board detrimental to their interests would produce the anomalous result that virtually no one would have such standing. In our view, under the facts presented here, such a result would thwart the purposes of section 120.54(4). We therefore affirm the hearing officer's standing decision.
Turning to the merits, the issue may be best brought into focus by first examining the hearing officer's analysis of the controlling statute, section 466.007(2)(b). It will be recalled that this section provides that a person may take the examination required for licensure as a dental hygienist if the person is a "graduate of a dental hygiene college or school approved by the Board or accredited by the Commission on Accreditation of the American Dental Association or its successor agency." The hearing officer acknowledged that generally, the word "or" signifies the disjunctive, and its use in a statute normally would indicate that alternatives were intended. See, for example, Sparkman v. McClure, 498 So.2d 892 (Fla. 1986). However, the hearing officer noted, if the word "or" is given its usual effect, the Board of Dentistry would have the discretion to approve schools or colleges, whether or not accredited. In addition, the Board would not be constrained to approve only unaccredited schools or colleges that are the equivalent of accredited schools or colleges. The hearing officer next turned to the hygienists' argument, based in part upon the legislative history of section 466.007(2)(b), that the legislature intended to restrict the Board, in its designation of approved institutions under section 466.007(2)(b), to schools or colleges providing traditional post-secondary college education, and more particularly, to schools or colleges that are either accredited by the Commission on Accreditation of the American *653 Dental Association, or a successor agency, or are the equivalent of accredited schools and colleges. Reviewing the pertinent legislative history, the hearing officer found:
(a) Florida's first dental hygiene licensure law, passed in 1927, required applicants to either have graduated from a "reputable training school for dental hygienists" or present a sworn statement from a licensed dentist that the applicant had completed at least six months of training in dental hygiene from the dentist. Section 3560, Chapter XXV, Compiled General Laws of Florida (1927).
(b) In 1931, the law was amended to require applicants to be "a graduate of an accredited school conducting a course for dental hygienists." Section 30, Chapter 14708, Laws of Florida (1931).
(c) In 1941, the law was further amended to require applicants to be graduates "of a school approved by the Board for dental hygienists and conducting a course consisting of not less than one academic year for dental hygienists." Section 466.37, Fla. Stat. (1941).
(d) A 1955 amendment increased the education requirement of two academic years and required graduation from a school approved by the Board. See Section 466.37, Fla. Stat. (1955).
(e) In 1961, the Legislature made use of the phrase "dental hygiene school or college" in connection with the requirements for licensure. Section 466.37, Fla. Stat. (1961).
(f) The current language in Section 466.007(2)(b), specifically the reference to accreditation by the Commission on Accreditation of the American Dental Association or its successor agency, is the result of a 1986 amendment to the statutes. See Section 1, Chapter 86-291, Laws of Florida (1986).
Regarding this legislative history, the hearing officer observed that it could be used as support for the hygienists' argument, but alone "may not be enough to establish a legislative intent contrary to the meaning normally given to the words used in the statute." The hearing officer found, however, that the hygienists' citation to Florida State Board of Architecture v. Wasserman, 377 So.2d 653 (Fla. 1979), and argument pursuant to the principle of that case, required a different interpretation of the statute.
In Wasserman v. Florida State Board of Architecture, 361 So.2d 792 (Fla. 1st DCA 1978), the district court of appeal found unconstitutional a statute permitting the Board to deny registration on the ground that the applicant does not hold a professional degree from an approved school, because the statute permitted unbridled discretion by the Board and therefore amounted to an unlawful delegation of legislative authority. Reversing, the Florida Supreme Court held that if the constitutionality of a statute is questioned, and it is reasonably susceptible of two interpretations, one of which would be unconstitutional and the other valid, the court must adopt an interpretation which will render the statute valid. 377 So.2d at 656. Accordingly, the court held that in interpreting a statute which required that any applicant for admission to practice architecture establish that he is a graduate of a school or college of architecture, or has had training found by the Board of Architecture to be "fully equivalent," the statute must be interpreted as requiring the Board, when ruling upon application for admission under the equivalency standard, to evaluate the applicant's training by comparing it to the curriculum required for graduation from a school or college of architecture. In so ruling, the court observed that there are "widely recognized standards with regard to the educational requirements of professional schools of architecture." 377 So.2d at 656. Further, the legislature, by conferring upon the Board of Architecture the authority to adopt and publish a list of approved schools and colleges of architecture, "did so with reference to a definite conception of what a school or college of architecture is." Id. at 657. Thus, the court concluded, the authority to adopt and publish a list of approved schools and colleges of architecture did not confer on the Board of Architecture "the power to approve any school as a school or college of *654 architecture or to recognize any academic degree as meeting the degree requirement." Id. Thus, the court held: "The requirement of a degree from a school or college of architecture establishes a standard by which to evaluate applicants. The training equivalency provision of the statute is governed by the same standard. That is, the legislature intended that the Board evaluate the applicant's training by comparing it to the curriculum required for graduation from a school or college of architecture. Id.
Applying ordinary rules of statutory interpretation, the hearing officer proceeded with a legal analysis upon which he based his final conclusion that the proposed rules were invalid. We quote from the final order under review:
25. It often is said that the polestar of statutory interpretation is the legislative intent. See e.g., Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099 (Fla. 1989); Lowry v. Parole and Probation Comm'n, 473 So.2d 1248 (Fla. 1985). Even when the plain meaning of the language which the Legislature chooses to use in a statute might seem to point to another interpretation, the meaning intended by the Legislature must be given effect. Byrd v. Richardson-Greenshields Securities, Inc., supra; Vildabill [Vildibill] v. Johnson, 492 So.2d 1047 (Fla. 1986); Parker v. State, 406 So.2d 1089 (Fla. 1981); Griffis v. State, 356 So.2d 297 (Fla. 1978). This is one of those cases. Even though the Legislature chose to use the disjunctive "or" in Section 466.007(2)(b), the Legislature also is presumed to know the legislative history and the Wasserman decision. It is concluded that the Legislature intended to restrict the Board of Dentistry, in approving dental hygiene schools or colleges, to either accredited schools or colleges or unaccredited schools or colleges that are comparable to accredited schools and colleges.
26. To be comparable to an accredited school or college, an unaccredited school or college need not be the same as but need only be equivalent to an accredited school or college. See Moorehead v. Dept. of Prof. Reg., 550 So.2d 521 (Fla. 1st DCA 1989). But both the proposed designation rule and the proposed criteria rule would approve programs of dental hygiene instruction that would not be the equivalent of schools or colleges approved by the Commission on Accreditation of the American Dental Association.
27. The Board's policy choices in proposing the two proposed rules under challenge in this case go beyond the range of possible choices under Section 466.007(2)(b), as construed in light of the legislative history and the Wasserman decision. Contrast Dept. of Prof. Reg., etc., v. Durrani, 455 So.2d 515, 517 (Fla. 1st DCA 1984). As such, they would modify, enlarge, or contravene Section 466.007(2)(b) and must be invalidated.
We find the hearing officer's legal analysis persuasive and determinative under the facts presented. As for the issue of equivalency of the ADHP and accredited schools or colleges, the Board does not seriously attempt to discredit the hearing officer's findings which demonstrate a lack of equivalency.[2] In fact, the Board concedes *655 in its reply brief that the Board has never contended that the standards contained in the proposed criteria rule (which are comparable to those for the ADHP) are equivalent to those of the accreditation agencies.
With respect to the hearing officer's application of Wasserman, the Board urges that Wasserman does not require that section 466.007(2)(b) be read as requiring the schools or colleges approved by the Board to be equivalent to those accredited by the Dental Accreditation Commission. Rather, the Board urges, Wasserman demands only that the statute be read as containing a presumption that the term "approved by the Board" permits the Board to approve only those unaccredited schools or colleges which sufficiently train dental hygienists. In other words, according to the Board, the statute simply gives the Board the choice of approving schools or colleges in addition to accepting graduates of accredited programs. We find this argument unpersuasive.
If, as the Board suggests, the statute merely requires that the Board approve only those schools or colleges which "sufficiently train dental hygienists," without any guidance as to what standards should *656 be used to measure "sufficiently," then the legislative approval of schools or colleges accredited by the Dental Association Commission would appear to be superfluous. On the other hand, as the analysis by the hearing officer concludes, the requirement concerning accreditation is more logically and reasonably read as a standard selected by the legislature against which the "acceptance" of schools by the Board is to be measured. Furthermore, such a reading is clearly required by Wasserman. That this is so is convincingly shown by the fact that absent the accreditation standard, the Board would be left with virtual unbridled authority to admit hygienists to practice in Florida. We reject such an interpretation, as did the hearing officer, because the failure to fix standards for approval of schools or colleges would render the statute unconstitutional, as held in Husband v. Cassel, 130 So.2d 69 (Fla. 1961); see Pridgen v. Sweat, 125 Fla. 598, 170 So. 653 (1936), and Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978).
Under the Board's view it would have virtually unlimited discretion subject only to the requirement that it should "ensure that every dentist and dental hygienist practicing in this state meets minimum requirements for safe practice." This language is extracted from the legislative declaration of purpose in enacting Chapter 466, found in section 466.001. Under this general standard, there would be no requirement that dental hygienists attend any school or college, a possibility clearly ruled out long ago by the legislature, as the hearing officer's charting of the legislative course since 1927 shows.
In substance, the hearing officer found that what the Board advocates, in final analysis, both in its construction of the statute and the proposed rules, is a return to a preceptor or apprenticeship-type of dental hygiene training, a result the legislature has steadily moved away from since 1927 in this state.
Without further unduly lengthening this opinion with a discussion of the hearing officer's factual findings, suffice it to say that the hearing officer found vast differences between the ADHP and similar programs, and the Florida and other accredited school and college programs for dental hygienists.[3] We have determined, after careful review, that the hearing officer's findings that the proposed rules do not meet the requirements of section 466.007(2)(b), Florida Statutes (1989), are supported by competent substantial evidence and therefore must be affirmed.[4]
AFFIRMED.
ERVIN, SMITH and ALLEN, JJ., concur.
NOTES
[1] See, Florida Dept. of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978); Professional Firefighters v. Dept. of Health and Rehab. Services, 396 So.2d 1194 (Fla. 1st DCA 1981); Florida Medical Association, Inc. v. Dept. of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983); State Board of Optometry v. Florida Society of Ophthalmology, 538 So.2d 878 (Fla. 1st DCA 1989); Coalition of Mental Health Professions v. Dept. of Professional Regulation, 546 So.2d 27 (Fla. 1st DCA 1989). In his final order the hearing officer, after discussion of these cases, noted that each side argued that the cases favoring its position were "like this case." The hearing officer gave this cogent rejoinder: "In fact, this case is both like and unlike all of the cases that resulted in the above decisions. Unlike the Professional Firefighters, the rule challenged in this case does not initiate licensure requirements where there were none before. Unlike the case involving the ophthalmologists, this is neither a case where the rule authorizes a licensed profession to engage in an activity exclusively reserved by statute to another licensed profession, nor is it a case where the rule authorized a licensed profession to engage in an activity previously, but no longer, exclusively reserved by statute to another licensed profession. And unlike the rule in issue in the Coalition of Mental Health Professions, the rule at issue in this case does not define the practices of various professionals licensed by the same regulatory agency."
[2] A partial summary of the facts found by the hearing officer in comparing accredited programs with the ADHP is instructive. Dental hygiene in Florida is taught in the community college system, of which there are nine, all accredited by the Commission on Dental Accreditation of the American Dental Association. Course work requirements for a dental hygiene degree range from 70 to 95 academic credits hours over a two-year-plus time period. Florida dental hygiene programs require in excess of 70 credit hours, a minimum of 60 credits being required for an Associate of Arts degree. The program includes general education and science courses as well as dental hygiene courses. The curriculum is comprehensive and includes general education, basic sciences, and didactic and clinical dental hygiene education. Education by Florida community colleges is offered at a minimum competency level reflected in standardized "curriculum frameworks" for each program. These frameworks, adopted by the State Board of Education, establish a standardized guide for development of education programs, and are required by state and federal law. The curriculum framework for dental hygiene education is required to meet the standards for accreditation by the Commission on Dental Accreditation of the American Dental Association. Accreditation by the Commission requires that both didactic and clinical dental hygiene education be offered at the college level in post-secondary schools or colleges accredited by a regional accrediting agency, that an associate or baccalaureate degree be awarded, and that the program prepares students to continue their education. A basic science background in dental hygiene education helps students understand the transmission of diseases, such as AIDS, and a liberal arts education helps prepare the dental hygienist for effective patient communication relating to dental hygiene. Florida's community college programs must also be accredited by the Southern Association of Colleges and Schools. The dental hygiene curriculum requirements in Florida's community colleges go beyond the Commission on Dental Education minimum requirements with respect to the core dental hygiene instruction. In post-secondary academia, the term "college" means an established institution of higher learning; the term "school" means an organized body that leads to a post-secondary degree. A school is usually organized within a college. A "program" is a term of art in academia that means an identified, organized course of study leading to a degree. Programs are offered within academic schools or colleges. In dental hygiene education, the terms "dental hygiene college," "dental hygiene school," and "dental hygiene program," are synonymous. The Commission on Dental Accreditation of the American Dental Association accredits those organized courses of study that lead to a degree in dental hygiene, regardless of whether the course of study is labeled a dental hygiene college, school, or program.

By contrast, the Alabama Dental Hygiene Program (ADHP) is not accredited by, nor does it have status toward accreditation by the Commission on Dental Accreditation of the American Dental Association. Under the ADHP, any licensed dentist is approved by the state licensing board to provide on-the-job training in dental hygiene to dental assistants with at least one year experience as a dental assistant. Dental assistants are not licensed in any state. The sponsoring dentist is responsible for the clinical adequacy and thoroughness of the training. The Alabama Board of Dental Examiners administers and has final authority over the program, in concert with the Alabama Dental Association. The ADHP is a one-year course of study that combines formal classroom education with hands-on clinical training. Trainees receive approximately 165 hours of didactic lectures in two separate week-long sessions, and four two-day weekend sessions, concurrent with the one year of preceptor training. Accredited programs generally include a minimum of approximately 1,000 classroom hours. Although the didactic lectures for the ADHP are provided by the University of Alabama College of Dentistry in Birmingham, Alabama, it is not a program within or sponsored by the university, the university does not give academic credit for it, and it does not lead to a post-secondary degree. The ADHP includes significantly less formal classroom education in all areas of general education and basic sciences, and significantly fewer lectures in the clinical practice of dental hygiene than do accredited programs. Accredited programs require, but the ADHP does not, courses in chemistry, head and neck anatomy, histology, periodontology, nutrition, public health, pharmacology, pathology, dental materials, law and ethics, sociology, psychology and English. A course in disease control, which is of particular importance since the onset of AIDS, and which requires a strong basic science and biology background, also is absent from the ADHP. Clinical training under the ADHP is done in the office of a sponsoring dentist, using a series of educational modules, which the sponsoring dentist must verify as having been completed. However, the ADHP clinical training is less standardized than that received under accredited programs. Comparison of the Alabama and Florida clinical examination scores does, however, provide a strong indication of equivalency in terms of clinical abilities of the ADHP graduates and graduates of accredited programs.
[3] Seven experts from a variety of disciplines testified on behalf of the hygienist association. They unanimously agreed that the proposed rules would lower dental hygiene education standards in Florida to a level below that of the standards required in all states but Alabama. See summary of findings, footnote 2, supra.
[4] We have not overlooked the Board's contention that certain findings of fact by the hearing officer are not supported by competent, substantial evidence and cannot be the foundation for legal conclusions. In particular, the Board takes issue with the hearing officer's finding that ADHP graduates are not eligible to sit for the National Board of Dental Hygiene examination, which applicants for licensure in Florida must successfully complete within ten years of the date of their application. Section 466.007(2)(c), Florida Statutes. We find the evidence on this issue so equivocal as to make it difficult to arrive at a conclusion one way or the other as to the correctness of the hearing officer's finding. However, even assuming error in this regard, we find the same harmless.