LEWIS, C.J.
Appellants, the Office of Insurance Regulation (“OIR”) and the Financial Services Commission, challenge the administrative law judge’s Final Order invalidating in part OIR-B1-1699, entitled ‘Windstorm Loss Reduction Credits” (“Form 1699”), and invalidating in its entirety OIR-B1-1655, entitled “Notice of Premium Discounts for Hurricane Loss Mitigation” (“Form 1655”), and Florida Administrative Code Rule 690-170.0155(k). Appellants contend that the administrative law judge (“ALJ”) erred in determining that Appel-lee, Secure Enterprises, LLC, had standing to challenge Florida Administrative Code Rules 690-170.017 and 690-170.0155 and Forms 1699 and 1655 and in concluding that Rule 69O-17Q.0155(k) and both forms constituted invalid exercises of delegated legislative authority by modifying and contravening section 627.0629(1), Flor *334 ida Statutes. Because we agree with Appellants that the ALJ erred in finding that Appellee had standing to bring the rule challenge, we reverse the Final Order.
In 2006, the Legislature amended section 627.0629, entitled “Residential property insurance; rate filings,” to provide:
(1) Effective June 1, 2002, a rate filing for residential property insurance must include actuarially reasonable discounts, credits, or other rate differentials, or appropriate reductions in deductibles, for properties on which fixtures or construction techniques demonstrated to reduce the amount of loss in a windstorm have been installed or implemented. The fixtures or construction techniques shall include, but not be limited to, fixtures or construction techniques which enhance roof strength, roof covering performance, roof-to-wall strength, wall-to-floor-to-foundation strength, opening protection, and window, door, and skylight strength. Credits, discounts, or other rate differentials for fixtures and construction techniques which meet the minimum requirements of the Florida Building Code must be included in the rate filing. All insurance companies must make a rate filing which includes the credits, discounts, or other rate differentials by February 28, 2003. By July 1, 2007, the office shall reevaluate the discounts, credits, other rate differentials, and appropriate reductions in deductibles for fixtures and construction techniques that meet the minimum requirements of the Florida Building Code, based upon actual experience or any other loss relativity studies available to the office. The office shall determine the discounts, credits, other rate differentials, and appropriate reductions in deductibles that reflect the full actuarial value of such revaluation, which may be used by insurers in rate filings.
Ch. 06-12, § 14, Laws of Fla. (Emphasis added). In 2007, the Legislature again amended the statute by deleting the June 1, 2002, language and including the language that “[i]t is the intent of the Legislature that insurers must provide savings to consumers who install or implement windstorm damage mitigation techniques, alterations, or solutions to their properties to prevent windstorm losses.” Ch. 07-1, § 19, Laws of Fla. In response to the 2006 statutory amendment, OIR amended rule 690-170.017 and incorporated Form 1699 by reference. OIR explained in the rule that the residential insurance credits contained within Form 1699 were based upon the study entitled “Development of Loss Relativities for Wind Resistive Features of Residential Structures,” which was a study completed in 2002 by Applied Research Associates, Inc. (“ARA”). Florida’s Department of Community Affairs had contracted with ARA to evaluate the effectiveness of wind resistive features in reducing hurricane damage and loss to single family residences in Florida. According to OIR, ARA’s 2002 study was the only loss relativity study available to it when the Legislature directed it in section 627.0629(1) to reevaluate the insurance discounts and credits.
Pursuant to Form 1699, homeowners are entitled to the same “opening protection” insurance credit for “Windows or All,” meaning that homeowners who upgrade or strengthen only their windows to protect against storm damage receive the same insurance credit as those homeowners who choose to upgrade both their windows and their doors. The discounts provided for in Form 1699 must be used by Florida insurers without modification unless modified credits are supported by detailed alternative studies where all assumptions are available to OIR for review. Fla. Admin. Code R. 690-170.017(2). The record es *335 tablishes that there are certain insurance companies in Florida who provide different insurance credits than those included in Form 1699. According to OIR, insurance companies are not precluded from providing separate or additional insurance credits to those homeowners who upgrade then-garage doors as long as the credits are sufficiently supported by “detailed alternative studies.”
In May 2012, Appellee filed a rule challenge pursuant to section-120.56, Florida Statutes, in which it contended that rules 690-170.017 and 690-170.0155 and accompanying Forms 1699 and 1655 were invalid exercises of delegated legislative authority and were arbitrary and capricious. Appel-lee, the manufacturer of the Secure Door residential garage door bracing system, challenged the fact that Form 1699 includes an insurance credit for homeowners who upgrade their windows or glazed openings to protect from storm damage but does not include a separate credit for homeowners who upgrade their non-glazed garage doors. Appellee argued that section 627.0629(1) requires that homeowners who upgrade their non-glazed garage doors receive an additional insurance credit. It further contended that Form 1655 failed to provide notice to homeowners about the availability of credits for non-glazed garage doors that were demonstrated to reduce the amount of loss in a windstorm.
As to its standing to challenge the rules and forms, Appellee alleged that it had been substantially and negatively affected because it manufactures a product that would entitle homeowners to a discount on their home insurance policies had OIR properly implemented the statutory requirements of section 627.0629(1). Appel-lee asserted that its Secure Door is a product utilized by Florida homeowners to bring non-glazed garage doors into compliance with the minimum requirements of the Florida Building Code. The product allegedly makes garage doors wind-pressure-resistant but - not impact-resistant. According to Appellee, it had experienced a significant loss of sales over the “last few years” as homeowners and companies who had previously used the Secure Door were opting either to purchase a much more expensive impact-resistant garage door or to make no upgrades at all “as there is no financial incentive by way of insurance credits for homeowners to upgrade garage doors.... ” In support of its argument as to standing, Appellee submitted financial information showing that its revenue from sales of the Secure Door went from $87,700 in 2004 to a high of $1,086,300 in 2007 and then down to $307,300 in 2011; its sales from 2007 to 2011 included sales to Lowe’s stores. It also submitted two affidavits of owners of companies who had once purchased the Secure Door product from Appellee. According to the affidavits, the owners decided to stop purchasing the Secure Door because their customers were no longer receiving an insurance credit for upgrading their garage doors.[1]
In determining that Appellee had standing to bring the rule challenge, the ALJ relied upon several of our prior decisions, including Abbott Laboratories v. Mylan Pharmaceuticals, Inc., 15 So.3d 642 (Fla. 1st DCA 2009), Department of Professional Regulation, Board of Dentistry v. Florida Dental Hygienist Association, 612 So.2d 646 (Fla. 1st DCA 1993), and Televisual Communications, Inc. v. State, Department of Labor and Employment Security/Division of Workers’ Compensation, 667 So.2d 372 (Fla. 1st DCA 1995). With respect to whether Appellee suffered an *336 injury in fact as a result of the rules and forms, the ALJ reasoned that the injury in fact determination did not require the “fine analysis” of Appellee’s year-to-year revenue that both sides undertook at the hearing. He then set forth:
Although [Appellee’s] sales are probably sensitive to the frequency of hurricanes, under Televisual and Dental Hygienist, ... injury-in-fact may be inferred from the likelihood that an annual premium discount for the one-time purchase and installation of [Appellee’s] product, given its low cost, would mean increased sales; therefore, the absence of such a discount would likely cause [Appellee] economic injury.
With respect to whether Appellee’s interests are within the zone of interest protected or regulated by section 627.0629(1), the ALJ reasoned that Appellee’s financial interest was “collaterally” within the zone of interest protected by the statute. According to the ALJ, the legislative mandate requiring the adoption of an extensive set of discounts for mitigative fixtures and construction techniques collaterally protected or regulated those segments of the construction industry, including Appellee, directly providing such mitigative goods and services.
On the merits of the rule challenge, the ALJ agreed with Appellee that Form 1699 was an invalid exercise of delegated legislative authority because of its failure to include an additional insurance credit for garage doors. As a result, the ALJ invalidated page one of the form relating to existing construction; page two of the form addresses new construction. He also invalidated Form 1655 based upon his determination that the notice misled homeowners by suggesting that the only form of opening protection eligible for an insurance discount was shutters and rule 690-170.0155(k) wherein OIR adopted Form 1655. The ALJ declined to invalidate rule 690-170.017 given that a portion of the rule incorporating by reference Form 1699 was still valid as to new construction. This appeal followed.
Standing is a question of law subject to de novo review. Palm Beach Cnty. Envtl. Coal. v. Fla. Dept of Envtl. Prot., 14 So.3d 1076, 1077 (Fla. 4th DCA 2009). Pursuant to section 120.56, Florida Statutes, “Any person substantially affected by a rule or a proposed rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority.” To establish standing under the “substantially affected” test, a party must show: (1) that the rule or policy will result in a real or immediate injury in fact; and (2) that the alleged interest is within the zone of interest to be protected or regulated. Jacoby v. Fla. Bd. of Med., 917 So.2d 358, 360 (Fla. 1st DCA 2005). To satisfy the sufficiently real and immediate injury in fact element, an injury must not be based on pure speculation or conjecture. Lanoue v. Fla. Dept. of Law Enforcement, 751 So.2d 94, 97 (Fla. 1st DCA 1999).
As stated, the ALJ primarily relied upon three of our previous decisions in finding that Appellee had standing to bring the rule challenge. We agree with Appellants, however, that the ALJ’s reliance upon the decisions was misplaced and that his determination of standing was erroneous. A review of our prior case law is in order.
In Abbott Laboratories, we determined that the act of removing a certain drug manufactured by Abbott Laboratories from the negative drug formulary, which had the effect of allowing pharmacists to freely substitute generic drugs for Abbott’s brand name drug, was a direct inju *337 ry in fact of sufficient immediacy and reality to grant Abbott and the appellee, the maker of a competing generic drug, standing in the rule challenge proceeding. 15 So.3d at 651 n. 2. We noted that it could not be disputed that both parties’ interests were within the zone of interest regulated by the statutes at issue. Id.
In Department of Professional Regulation, Board of Dentistry, the appellant appealed a final order holding invalid two of its proposed rules. 612 So.2d at 647. Under the pertinent statute, a person desiring to be licensed as a dental hygienist could apply to the appellant to take the licensure examination if, among other things, the person was a graduate of a dental hygiene college or school approved by the appellant or accredited by the Commission on Accreditation of the American Dental Association or its successor agency. Id. The rule at issue, in its then-current form, provided that only those dental hygiene colleges or schools accredited by the Commission or its successor agency were deemed approved by the appellant. Id. A proposed amendment to the rule provided that the Alabama Dental Hygiene Program was determined to be a dental hygiene school or college within the meaning of the pertinent statute. Id. The appellant also proposed a rule establishing criteria for approval of a dental hygiene school or college. Id. The appellee filed a petition challenging the proposed amendment designating the Alabama Dental Hygiene Program as an approved college or school and also challenged the second proposed rule amendment. Id.
In affirming the determination that the appellee had standing, we noted in part that it required “no flight of imagination to reason that if the rule would produce a flood of lesser-trained hygienists, presumably available for employment for less compensation, this would have an economic impact on the existing pool of more highly-trained individuals.” Id. at 649. We further set forth that “those hygienists who are already qualified, licensed and practicing in Florida have a sufficient interest in maintaining the levels of education and competence required for licensing to afford them standing to challenge an unauthorized encroachment upon their practice.” Id. at 651. We determined that the “professional and economic interests” of current dental hygienists were directly affected. Id.
In Televisual Communications, Inc., the appellant sought review of a final order dismissing its rule challenge petition for lack of standing. 667 So.2d at 372. We noted that the appellant alleged that it was a publisher of educational materials useful to health care practitioners and had specialized in the production of medical educational video programs for five years. Id. at 373. The proposed rules at issue established procedures and requirements to implement the certification of health care providers and established the procedures and criteria for the approval of the minimum five-hour training course required for physician certification in accordance with a workers’ compensation statute. Id. The appellant challenged the portion of the proposed rules that required the presence of an instructor during the five-hour training course if audio-visual material was to be utilized. Id. The requirement would not allow the use of correspondence courses to meet the training course requirement. Id. At a hearing, the appellant’s president testified that his company would produce VHS tapes with handouts and that the material would cover all topics required under the pertinent statute. Id. He also testified that, -without the instructor requirement, the appellant could double its existing sales. Id. The hearing officer determined that the ■ appellant lacked standing to challenge the proposed *338 rules while noting the appellant’s argument that it would be precluded from marketing a home study course and would, as a result, fail to realize profits from the sale of videos that it might otherwise garner if the rule allowed home study. Id. The hearing officer also determined that the potential financial impact to the appellant was speculative. Id. In reversing, we set forth in part:
The hearing officer'erred, however, in concluding that the proposed rule does not purport to subject [the appellant], or those similarly situated, to regulation or control. The proposed rules require physicians to enroll in and complete a training course approved by the Division. The proposed rules also set forth the criteria which must be met in order to obtain approval of a course. In addition to the requirement at issue, that a qualified and approved instructor must be present during presentation of audiovisual materials, the proposed rules set forth the required qualifications of instructors or authors, method of verifying attendance, and subject matter to be covered. The rules also provide for revocation of approval of a course upon certain grounds. In summary, the rule purports to regulate the industry that provides the medium for education of health care providers.
The hearing officer correctly noted that [the appellant] was not a health care provider ... but failed to recognize that [the appellant] was indeed affected by the proposed rule which has the collateral effect of regulating [its] industry. Moreover, the hearing officer erred in concluding that the evidence of financial impact was too speculative to support the existence of standing.
Id. at 374. In support of our statement that the hearing officer erred in concluding that the existence of financial impact was too speculative, we cited to Department of Professional Regulation, Board of Chiropractic v. Sherman College of Straight Chiropractic, 682 So.2d 559, 559-60 (Fla. 1st DCA 1995), where we found no error in the determination that the appellee college had standing to challenge rule amendments where the weight of the evidence showed that the amendments caused the appellee’s school enrollment to drop.[2] Id.
While the ALJ correctly reasoned based upon the foregoing cases that economic injury may satisfy the injury in fact element of the pertinent standing test, the facts of this case are distinguishable from the situations addressed in those cases. Abbott Laboratories and Department of Professional Regulation, Board of Dentistry both dealt with economic competition, which is something that is not present in this case. It is reasonable to conclude as we did in those two cases that allowing either a generic drug to enter the pharmaceutical market or less-educated dental hy *339 gienists to enter the field of hygienists in Florida would result in economic harm to a brand-name drug manufacturer or dental hygienists currently working in the state. Unlike the situations in Abbott Laboratories and Department of Professional Regulation, Board of Dentistry, a manufacturer in this case is claiming economic harm based upon the absence of an insurance credit that Florida homeowners have never been provided. Had this been a situation where OIR eliminated an existing insurance credit for garage doors, Appellee’s injury in fact argument would be much stronger. However, as it stands, Appellee has no protected economic right that has been impaired by the rules and forms at issue. See State, Bd. of Optometry, 538 So.2d at 881.
With respect to the ALJ’s reliance upon Televisual Communications, Inc., he reasoned that in that case, the appellant’s president’s testimony of a potential doubling in sales, “evidently without more,” was held not to be speculative. The ALJ also reasoned that that case, along with the other cases he relied upon, illustrated the “legitimate role of reasoning and inference in determining whether a challenge has proved sufficient economic injury to prove injury-in-fact.” Yet, not only was our holding in Televisual Communications, Inc. predicated on the testimony that the appellant could double its sales if instructors were not required to be present during the presentation of audio-visual materials, but it was also based on the fact that the rules at issue regulated the industry that provided the medium for education of health care providers. In other words, the proposed rule had the “collateral effect of regulating [the appellant’s] industry.” As OIR argues in this case, neither the statute nor the rules at issue regulate, either directly or indirectly, Ap-pellee’s industry.
Furthermore, as we have previously explained, an injury must not be based on conjecture. See Lanoue, 751 So.2d at 97. While acknowledging that Appellee’s sales are “probably sensitive” to the frequency of hurricanes, the ALJ found that the injury in fact element “may be inferred from the likelihood that an annual premium discount for the one-time purchase and installation of [Appellee’s] product, given its low cost, would mean increased sales” and that, as a result, the absence of such a discount would “likely cause” Appellee economic injury. These findings confirm that Appellee failed to show that the rules and forms at issue have resulted in a “real or immediate” injury in fact sufficient to satisfy the substantially affected test.
We also agree with OIR that the ALJ erred in finding that Appellee’s interest fell within the zone of interest to be protected or regulated by section 627.0629 or the pertinent rules. As section 627.0629(1) expressly provides, the Legislature intended that “insurers provide savings to consumers who install or implement windstorm damage mitigation techniques, alterations, or solutions to their ' properties to prevent windstorm losses.” Nothing in the language of the statute indicates that the purpose behind it was to increase manufacturers’ sales. While such a financial benefit to manufacturers of certain products has presumably resulted from the existence of insurance credits, we do not find that that type of financial interest is the type that section 627.0629(1) was intended to regulate or protect. The statute, was instead clearly designed to protect consumers who choose to strengthen their homes against storm damage and insurers by lessening their financial exposure when storm damage occurs. As such, Appellee failed to satisfy the required zone of interest element. Cf. Jacoby, 917 So.2d at 359-60 (holding that the appellant, a physician with a valid *340 New York medical license, met the zone of interest test to challenge rules relating to licensure restrictions and the appellee’s non-rule policy of denying a license to anyone with a probationary license in another state); Lanoue, 751 So.2d at 99 (holding that because the appellant was charged with DUI and had his license suspended and because both the offense and suspension were addressed in the statutory scheme at issue, the appellant had an interest within the zone of interest regulated by the statutes and rules and had standing to challenge the rules).
For the foregoing reasons, we conclude that the ALJ erred in determining that Appellee had standing to challenge the rules and forms at issue. We, therefore, REVERSE the Final Order.[3]
MARSTILLER, J., concurs.
OSTERHAUS, J., concurs with opinion.

. It is undisputed that Florida homeowners have never received a separate or additional insurance credit for upgrading or strengthening their garage doors.

. We also noted in Televisual Communications, Inc. that the hearing officer erroneously relied upon State, Board of Optometry v. Florida Society of Ophthalmology, 538 So.2d 878 (Fla. 1st DCA 1988). In that case, we explained that a certain statute authorized optometrists to administer topical ocular drugs. 538 So.2d at 879. That practice had previously fallen within the exclusive domain of allopathic and osteopathic physicians. Id. We reversed the hearing officer's conclusion that certain appellees had standing to- maintain the rule challenge under section 120.56. Id. In doing so, we noted that the appellees’ right to administer topical ocular drugs was no longer exclusively reserved to their field of practice and that they were no longer in a position to assert a protected economic right that had been impaired by the subject rule. Id. at 881. We reasoned that the appellees were not subject to regulation or control by the rule and could not predicate standing on the notion that the application of the challenged rule would prevent or obstruct their practicing ophthalmic medicine. Id.

. We note that if Appellee had standing in this case, we would reverse the Final Order on the merits because, in our opinion, the rules and forms at issue do not contravene or modify section 627.0629(1) and, therefore, do not constitute an invalid exercise of delegated legislative authority.